# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-01-00084-CV

**John W. Berkel and John W. Berkel, P.C./Texas Property and Casualty
Insurance Guaranty Association, Appellants**

**v.**

**Texas Property and Casualty Insurance Guaranty Association/John W. Berkel
and John W. Berkel, P.C., Appellees**

---

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 201ST JUDICIAL DISTRICT
### NO. 479,513, HONORABLE W. JEANNE MEURER, JUDGE PRESIDING

---

John W. Berkel, P.C. (ABerkel@) sued the Texas Property and Casualty Insurance Guaranty Association (AAssociation@) and Stephen S. Durish (AReceiver@) in his capacity as receiver for National County Mutual Fire Insurance Company (ANational@).[1] On competing motions for summary judgment, the trial court awarded Berkel judgment against the association in the amount of $6,306 on Berkel=s cause of action to enforce a contract.[2] The judgment denied, however, Berkel=s related claims for statutory attorney=s fees, statutory postjudgment interest, and prejudgment interest.

---

[1] It is undisputed in the summary judgment record that John W. Berkel is the president and sole shareholder of John W. Berkel, P.C. John W. Berkel appeared in the cause as a plaintiff; the trial-court judgment orders that he take nothing in his individual capacity. We will affirm that order. He appears as an appellee only in the event a dispute arises concerning the standing of the professional corporation. None has arisen.

The Association appeals from that part of the judgment awarding Berkel a recovery of $6,306. We will affirm that part of the judgment. Berkel appeals from that part of the judgment denying its claims for attorney=s fees, prejudgment interest, and postjudgment interest. We will reverse that part of the judgment, sever it from the remainder, and remand to the trial court the part reversed.

**THE CONTROVERSY**

Leonard Jiminez purchased from National a policy of automobile-liability insurance. In 1986, during the policy term, Jane T. Winnow sued Jiminez in Harris County to recover for personal injuries

---

Early in the litigation, Berkel recovered a Apartial@ summary judgment against the Receiver in the amount of $842. The Receiver paid the judgment. As a result, the final judgment we now review orders that Berkel take nothing by his claim against the Receiver. We will affirm that part of the judgment. No party has appealed from that part; the Receiver is not a party to the appeal.

**2** Berkel=s live petition at the time of the summary judgment proceeding alleged alternative causes of action, namely: (a) an action to enforce a contract under which he was owed $6,306; (b) an action for damages in that amount for breach of contract, and (c) an action on sworn account arising from dealings between the parties. Berkel=s motion for summary judgment, liberally construed in favor of the Association, requested judgment on all three actions. We will affirm the judgment on the basis of (a) and need not consider the remaining two actions.

she allegedly sustained in an automobile collision with Jiminez. National engaged Berkel to defend Jiminez. Following a jury trial in March 1989, the trial court ordered that Winnow take nothing by her suit against Jiminez.

In Cause Number 453,041, the 201st Judicial District Court of Travis County, by an order dated October 24, 1988, placed National in receivership. The receivership proceeding was governed by article 21.28 of the Texas Insurance Code. *See* Tex. Ins. Code Ann. art. 21.28 (West Supp. 2002). On February 9, 1989, the Commissioner of Insurance designated National an "impaired insurer" as defined in article 21.28-C of the code. *See* Tex. Ins. Code Ann. art. 21.28-C, ' 5(9) (West Supp. 2002). Berkel thereafter filed in Cause Number 453,041 an updated proof of claim for services provided and expenses incurred in defending Jiminez.

In a letter dated November 14, 1989, the Receiver notified Berkel as follows:

> [Your claim] *has been approved as a covered claim* in the amount of $6,306.00 under the provisions of Article[s] 21.28 and 21.28-C of the Texas Insurance Code. A check in the amount of $6,306.00 will be forwarded to you when we receive a properly executed release. Please execute the enclosed release and have it properly notarized [sic] before a notary public before returning it to us.

(Emphasis added.) Berkel signed the sworn release before a notary public on November 28, 1989, and returned it to the Receiver. Thereafter the Receiver gave Berkel a bank check in the amount of $6,306 dated January 4, 1990. It was, however, made payable to Berkel and Jiminez jointly. Berkel was unable to locate Jiminez to obtain his endorsement. As a result, Berkel could not negotiate the check for payment.

The Receiver refused to issue a check payable solely to Berkel. Berkel=s written demand for payment was unsuccessful.

While the receivership remained pending in Cause Number 453,041, Berkel filed in the same court a petition initiating Cause Number 479,513, the litigation now before us on appeal. The original petition, afterward amended, fairly set forth alternative causes of action, namely: (1) an action to enforce an express contract allegedly evidenced by Berkel=s proof of claim, the Receiver=s letter of November 14, 1989, Berkel=s execution and delivery of the release, and the $6,306 bank check; (2) an action for breach of that alleged contract; and, (3) an action on sworn account. Because we conclude the summary judgment record established as a matter of law Berkel=s right to recover on the first cause of action, we need not discuss the others.

The cause now before us remained unadjudicated when the judge in the receivership proceeding signed on August 5, 1994, an AAgreed Order in Connection with Guaranty Association=s Election.@ Among other provisions, the agreed order directed the Receiver to notify Aall persons and entities with pending unresolved >covered claims= in this receivership@ that the Association had elected to assume the payment of Acovered claims@ under articles 21.28 and 21.28-C. Under the heading AFindings,@ the receivership court determined as follows in the agreed order: (1) the Association is the receiver=s Astatutory successor . . . with respect to the obligation to handle and pay all >covered claims= on policies issued by National County@; (2) the Association, in electing to assume payment of covered claims Adoes not succeed to or assume any liabilities . . . which have been asserted against the Receiver . . . which are not >covered

**4**

claims= as defined in Tex. Ins. Code Ann. art. 21.28-C@, and, (3) the Association Ahas no obligations in connection with any other claims except those that are >covered claims.=@

In a verified answer filed in the present cause after the date of the agreed order, the Association interposed against Berkel=s actions the following: (1) a general denial and a denial of the particulars of Berkel=s sworn account; (2) a denial that the Association was a party to any contract alleged by Berkel as a basis for a contract action; and, (3) a denial that Berkel=s claim was a Acovered claim,@ the only kind of claim for which the Association is liable under the Code. The Association alleged Berkel=s claim was not a covered claim under the Code because Berkel=s proof of claim was defective; and, moreover, neither the Receiver nor the Association was obliged to defend Jiminez for whom Berkel conducted a defense. Construing this last-named allegation most favorably to the Association, we interpret it to be an allegation that Berkel=s claim was not a covered claim because it did not arise out of the Jiminez policy and was not within its coverage, a matter we will explain below.

The parties filed competing motions for summary judgment consistent with their theories of action and defense. Without stating a basis therefor, the trial court awarded Berkel summary judgment for $6,306 but denied Berkel=s related claims for statutory attorney=s fees, prejudgment interest, and postjudgment interest. These appeals ensued.

## THE STATUTES

The material facts are undisputed. The appeals depend upon the construction and application of articles 21.28 and 21.28-C of the Texas Insurance Code, as those statutes existed at the relevant times. The two statutes govern receivership proceedings applicable to certain kinds of insurance

**5**

companies.  We believe it will be convenient and useful to summarize the relevant statutory provisions before turning to the parties=respective assignments of error.  In our summary, unless otherwise indicated, citations refer to the Texas Insurance Code as it existed in 1999.[3]

**Article 21.28**

Article 21.28, insofar as it applies here, establishes procedures that govern the receivership of insurers domiciled in Texas.  When a district court finds it necessary to do so, it appoints a receiver designated by the State Board of Insurance.  Title to the insurer=s property and other assets ordinarily vests in the receiver on the date the proceeding commenced; and, the rights and liabilities of the insurer, policy holders, creditors, and others interested in the estate are ordinarily fixed on the same date, save for the rights of claimants holding unliquidated or undetermined claims.  Tex. Ins. Code Ann. art. 21.28, ' 2(a)-(c) (West Supp. 2002).

On taking possession of an insurer=s assets, the receiver conducts the insurer=s business thereafter subject to the direction of the court.  The receiver is not, however, required to defend any action brought against the insurer=s insured.  The receiver=s obligations, in relation to the insurer=s assets, are secured by the receiver=s bond.  *Id.* ' 2(d), (e).

---

[3] Unless a material change occurred after 1999, the current code is cited for convenience.  As part of the statutory recodification program, articles one through twenty-seven of the existing insurance code were recodified as Title One of the current code, now with the short title, AThe Insurance Code of 1951.@ *See* Act of April 30, 1999, 76th Leg., R.S., ch. 104, ' 2, 1999 Tex. Gen. Laws 534.

Included among the receiver=s responsibilities are a duty and discretionary power to approve or reject claims against the insurer based upon a proof-of-claim procedure set out in the statute. If the receiver *approves* a claim, an interested party may object. After notice and hearing, the receivership court then determines the disputed claim *in the receivership proceeding itself*. If the receiver *rejects* a claim, the claimant may have the issue re-determined in a trial de novo conducted in the receivership court but in a separate cause that is governed by the rules of procedure and appeal applicable in civil cases generally. *Id*. ' 3(a)-(h). Approved claims are paid from the insurer=s assets according to a schedule of priorities prescribed in the statute. *Id*. ' 8.

The legislature intended that the foregoing provisions of article 21.28 operate in pari materia with the provision of article 21.28-C. *See, e.g.*, Tex. Ins. Code Ann. art. 21.28-C, '' 2, 8(a), 10(a), 17, 19 (West Supp. 2002).

## Article 21.28-C

Article 21.28-C was enacted *to provide funds* that a receiver may draw upon to pay covered claims (and protect in other ways the holders of such claims) when the assets of the receivership estate are temporarily unavailable or prove insufficient for the purpose. *Id*. '' 2, 8. The statutory apparatus for effectuating this purpose is set out in article 21.28-C operating in conjunction with article 21.28.

Article 21.28-C establishes the Association as a non-profit legal entity. As a condition precedent to the authorized transaction of insurance in Texas, the statute requires compliance with its terms

by all insurers licensed to do business in the State save those expressly excluded. *Id.* ' 3(a). National comes within the scope of the statute. *See id.* ' 6.

The Association operates under a plan approved by the Commissioner of Insurance and undertakes generally to discharge the policy obligations of an impaired insurer in receivership. *Id.* '' 8(b), 9. To that end, the Association investigates, adjusts, compromises, settles, and pays claims against the impaired insurer to the extent of the Association=s obligations under the statute. *Id.* ' 8(d).

The funds that article 21.28-C was designed to provide derive from a system of proportional assessments made against Association members from time to time. The resulting funds supplement those available to the receiver from marshalling and liquidating the insurer=s assets in the receivership proceeding. *Id.* '' 8(c), 18-20.

In administering the provisions of article 21.28-C, the Association is obligated to pay Acovered claims@ that exist before an insurer is designated an impaired insurer or that arise within certain periods thereafter; and, A[t]he obligation is satisfied by paying to the claimant the full amount of a covered claim for benefits.@ *Id.* ' 8(a).

ACovered claim,@ a key term for purposes of this appeal, is defined in article 21.28-C. In a broad sense, the term encompasses claims made on insurance policies issued by an Aimpaired insurer.@ *Id.* ' 5(8). An impaired insurer is one Aplaced in temporary or permanent receivership under an order of a court . . . based on a finding of insolvency and that has been designated an impaired insurer by the [C]ommissioner@ of Insurance. *Id.* ' 5(9)(A). The term Acovered claim@ is limited, however, by the following provisos: (1) the claim must be made by an insured or by a third-party liability claimant; (2) the

8

claim must arise out of and be within policy coverage, and may not exceed policy limits; (3) the policy must be one issued or assumed by an insurer licensed to do business in Texas and the claimant must be a Texas resident at the time of the insured event; (4) the claim is limited in amount to $300,000 save for worker=s compensation claims; and (5) the term A>covered claim= shall not include supplementary payment obligations, including adjustment fees and expenses, attorney=s fees and expenses, court costs, interest and penalties, and interest and bond premiums incurred prior to the determination that an insurer is an impaired insurer under this Act[,]@ nor shall the term Ainclude any prejudgment or postjudgment interest that accrues subsequent to the determination that an insurer is an impaired insurer under this Act.@ *Id.* ' 5(8).

## THE ASSOCIATION=S APPEAL

The Association contends the trial court erred in denying its motion for summary judgment and sustaining Berkel=s motion. The Association reasons that Berkel=s claim is not a covered claim as a matter of law under a proper construction and application of the statutory provisions outlined above; and, because the Association is liable solely for covered claims, the judgment must be reversed. The Association points out that neither the Receiver nor the Association was obliged to defend Jiminez; thus, Berkel=s claim for defending Jiminez is not within the policy and could not arise out of it as article 21.28-C, section 5(8) requires. *See Memorial Med. Ctr. v. Howard*, 975 S.W.2d 691, 693-694 (Tex. App.CAustin 1998, pet. denied). Moreover, the Association argues, article 21.28-C, section 5(8) defines the term Acovered claim@ to mean Aan unpaid claim of an insured or third-party liability claimant,@ and Berkel is neither. He was, instead, simply an attorney engaged by National to defend Jiminez. *See Texas Prop. & Cas. Guar. Ass=n v. Southwest Aggregates, Inc.*, 982 S.W.2d 600, 610 (Tex. App.CAustin 1998, no pet.).

**9**

These contentions, however valid they may be in the abstract, come too late and in the wrong proceeding. In *Howard* and *Southwest Aggregates, Inc.*, the trial court was called upon to make an *original* decision on the issue of whether a claim amounted to a Acovered claim@ under the statutory provisions outlined above. In the present case, however, the trial court was governed in its decision by this undisputed fact: the Receiver had previously determined, in an exercise of his statutory powers and responsibilities, that Berkel=s claim *was* a covered claim in the amount of $6,306. And Berkel sued in the present cause to enforce the contract of which the Receiver=s determination was an evidentiary part. *See generally* 17B C.J.S. *Contracts* ' 600, 303-304; ' 732, 465 (1999).

The trial court was not free to disregard the Receiver=s determination. It was immaterial in the trial court that the Receiver=s determination might be erroneous under *Howard* and *Southwest Aggregates, Inc.* The trial court was not free to re-open the issue of whether Berkel=s claim was a covered claim.

The legislature placed *in the Receiver* Adiscretion to approve or reject any claim filed against the insurer.@ Tex. Ins. Code Ann. art. 21.28, ' 3(h) (West Supp. 2002). It cannot reasonably be contended, therefore, that the Receiver acted outside his jurisdiction when he determined that Berkel=s claim *was* a covered claim. Whether that determination be legally right or wrong in the abstract, it was nevertheless a valid exercise of the Receiver=s statutory authority. Article 21.28, section 3(h) explicitly contemplates that the receiver might err, within the limits of his jurisdiction and discretion, in deciding whether a claim is a covered claim. Yet his determination is final and binding unless set aside in the manner

**10**

authorized by the statutes themselves: that is the intent, meaning, and express effect of that part of article 28.28, section 3(h), providing for a judicial re-determination of whether a claim is a covered claim.

If the receiver *rejects* a claim, the claimant may within three months after receiving notice of the rejection sue *in a separate cause* in the receivership court and have his claim heard and determined de novo as in an ordinary civil case; Aotherwise, the action of the receiver shall be final and not subject to review.@ *Id.* If the Receiver *does not reject* a claim, this is to say, if he approves a claim as the Receiver did in Berkel=s case, Aany party interested@ may challenge the Receiver=s determination by filing Aobjections with the receiver, who shall forthwith present them to the [receivership] court for determination after notice and hearing.@ *Id.* This was the exclusive remedy and forum to challenge the Receiver=s covered-claim determination.

The Receiver=s determination that Berkel=s claim was a covered claim was never objected to, set aside, or revised in the only manner by which that may be done under the pertinent statutory provisions. It is not contended that the Receiver=s determination was invalid because procured by fraud, nor is it contended that he acted outside his jurisdiction. His determination is final and binding on Berkel and the Association. *Id*. It is a subsisting determination by an officer having statutory authority and a duty to make it. The trial judge was not free to disregard, revise, or set it aside in the present case *outside* the receivership proceeding.

We reject the Association=s theory that Berkel=s live petition amounts to a suit for judicial review of the Receiver=s determination by trial de novo. The Receiver did not *reject* Berkel=s claimCa statutory prerequisite to Berkel=s right to judicial review. Instead, the Receiver *approved* his claim as a

**11**

covered claim. And Berkel does not seek to revise or set aside the Receiver-s decision; rather, Berkel-s petition unmistakably requests enforcement of that decision as a valid unpaid obligation of the Association.

The Association also argues as follows: (1) its funds may not be used to pay Berkel-s claim because the Association is not the Receiver; (2) the Association was not a party to any purported contract between the Receiver and Berkel; and, (3) the agreed order of August 8, 1994, in the receivership proceeding, expressly limited the Association-s obligations to the payment of Acovered claims.@ We will not revisit the issue of whether Berkel-s claim is a covered claimCBerkel-s claim bears that character as a matter of law for purposes of the present litigation and for the reasons given previously. And the fact that the Association is not the same entity as the Receiver is immaterial, as is the fact that the Association was not a party to any contract between Berkel and the Receiver. The Association-s liability on the contract arises from the undisputed facts, the terms of the agreed order, and the statutory provisions invoked by that order.

Cause Number 453,041, the National receivership proceeding, was initiated before January 1, 1992. In that cause, the Association elected to assume its responsibilities in the receivership under articles 21.28 and 21.28-C as they existed at the time. *See* Act of Aug. 25, 1991, 72d Leg., 2d C.S., ch. 12, ' 1.27(b), 1991 Tex. Gen. Laws 310. Under those statutes, the Receiver was required to refer covered claims to the Association Afor processing@ and the Association was directed to Apay covered claims. . . . The obligation is satisfied by paying to the claimant the *full amount* of a covered claim for benefits.@ *Id.* '' 1.03, 1.20, sec. 8(a) (emphasis added).[4]

---

[4] Section 1.03 of the 1991 enactment amended section 3 of article 21.28 by adding subsection (i) to

**12**

read as follows:

> (i) Notwithstanding any other provision of this article, if a claim is covered by a guaranty fund created under Article . . . 21.28-C . . . of this code, the receiver shall refer the claim to the . . . guaranty association for processing.

Act of Aug. 25, 1991, 72d Leg., 2d C.S., ch. 12, ' 1.03, 1999 Tex. Gen. Laws 253. Section 1.20 of the 1991 enactment amended article 21.28-C of the Insurance Code extensively. After the amendment, section 8 of article 21.28-C provided as follows:

> Sec. 8. POWERS AND DUTIES OF ASSOCIATION. (a) The association *shall pay covered claims* that exist before the designation of impairment or that arise within 30 days after the date of the designation of impairment, before the policy expiration date if the policy expiration date is within 30 days after the date of the designation of impairment, or before the insured replaces the policy or causes its cancellation if the insured does so within 30 days after the date of the designation. The obligation is satisfied by paying to the claimant *the full amount of a covered claim* for benefits.

*Id*. ' 1.20, sec. 8(a), 1999 Tex. Gen. Laws 266 (emphasis added). Section 1.27(b) of the 1991 enactment authorized the Association to Aelect to assume its responsibilities under this Act in proceedings initiated before January 1, 1992,@ the effective date of the enactment. *Id*. ' 1.27(b), 1999 Tex. Gen. Laws 310.

**13**

In terms consistent with the statutory provisions, the agreed order spelled out the Association=s obligations. Under the agreed order, Athe Receiver is required . . . to refer ×covered claims= to the Association@; Athe association is the statutory successor to the Receiver with respect to the obligation to handle and pay all ×covered claims=@; the Receiver=s Aduties and responsibilities as to the ×covered claims= . . . terminate as of the date of [the Association=s] election@; and, Athe Association is the proper party in any cause of action related to the obligation to pay ×covered claims= in this receivership.@

The terms of the agreed order and the relevant statutory provisions as they existed at the time repel the Association=s theory that its funds may not be used to pay Berkel=s $6,306 claim and the Association=s theory that it has no contract obligation respecting that claim. The theories are untenable for the additional reason that they produce an absurd result the legislature could not have intended: under those theories neither the Association nor the Receiver would be obliged to pay Berkel=s claim even though it has subsisted as a covered claim since 1990 when the Receiver established its validity as such.

We hold the trial court did not err in awarding Berkel judgment for $6,306, the Afull amount@ of his covered claim as determined by the Receiver.

Berkel appeals from that part of the trial-court judgment that denies its claim for statutory attorney=s fees, prejudgment interest, and postjudgment interest. The claim for prejudgment interest is based on the common-law rule that such interest is an incident of a debt due and owing; the claim for postjudgment interest is founded on section 304.001 of the Texas Finance Code. *See* Tex. Fin. Code Ann. ' 304.001 (West Supp. 2002). The claim for statutory attorney=s fees rests on section 38.001 of the Texas Civil Practice and Remedies Code, authorizing such fees in suits founded on contract. *See* Tex. Civ. Prac. & Rem. Code Ann. ' 38.001(8) (West 1997). The issue reduces to whether the provisions of articles 21.28 and 21.28-C, properly construed, allowed a recovery of such sums in cases like the present.

In reaching his decision about whether Berkel=s claim was a covered claim under the statutes, the *Receiver* was expressly forbidden to include attorney=s fees in calculating the amount of the covered claim.[5] In the case before us now, that is not an issue; it is not even a consideration. We are required instead to decide whether the *trial court* erred in denying Berkel=s claims for attorney=s fees for work done *in this lawsuit*, and the interest claimed, when Berkel was forced to sue to recover the $6,306 that the Receiver determined he was owed as a covered claim.

---

[5] *See, e.g.*, *Metry, Metry, Sanom & Ashare v. Michigan Prop. & Cas. Guar. Ass=n*, 267 N.W.2d 695, 697-98 (Mich. 1978); *Ohio Ins. Guar. Ass=n v. Simpson*, 439 N.E.2d 1257, 1258-59 (Ohio Ct. App. 1981). Articles 21.28-C and 21.28 expressly exclude such sums from the category of covered claims. The Receiver presumably complied with the statutory provisions.

Berkel=s proof of claim and release, the Receiver=s award of $6,306 as a covered claim, and his issuance of a bank check in that amount were undisputed in the summary-judgment Aevidence.@ They established as a matter of law a right to recover $6,306 on the express contract alleged by Berkel. *See generally* 17B C.J.S. *Contracts* ' 600 at 303-304; ' 732 at 465 (1999). We believe Berkel was entitled to attorney=s fees, postjudgment interest, and perhaps some part of his claim for prejudgment interest that we cannot calculate from the record before us.

The Association was obligated to pay the Afull amount@ of Berkel=s claim. *See* Tex. Ins. Code Ann. art. 21.28-C, ' 8(a) (West Supp. 2002). These provisions indicate, in our view, a legislative intention that the Association shall place in the holder=s pocket the *exact amount* of a covered claim finally fixed in the receivership proceeding in the manner indicated previously. Against this inference, however, we must weigh other statutory provisions that might suggest a contrary intention on the legislature=s part.

Certain statutory provisions might permit a contrary inference. They must, however, be understood in context. We refer to the express language of article 21.28-C, section 5(8), declaring that a Acovered claim@ shall not include attorney=s fees and expenses or any prejudgment or postjudgment interest that accrues subsequent to the determination that an insurer is an impaired insurer under the Act. *Id.* ' 5(8). These provisions were intended to govern the Receiver=s decision-making process whereby a claim is determined to be a covered claim or not, and if so, in what amount. That is the statutory context in which they are found. We find in the statutes nothing that suggests the express prohibition against attorney=s fees, postjudgment interest, and prejudgment interest was meant to apply *after* the receiver makes his covered-claim decision and the time limit for judicial review of that decision has expired, as in the present case.

**16**

Article 21.28, section 8(d), declares explicitly that A[i]nterest shall not accrue on any claim subsequent to the date of the commencement of delinquency proceedings.@ Tex. Ins. Code Ann. art. ' 8(d) (West Supp. 2002). This provision is part of a schedule of relative priorities established by the legislature in connection with the final distribution of receivership assets. It governs all valid claims, whether made by an insured, a general creditor, a secured creditor, or any other. Section 8(d) of article 21.28 appears from its statutory context to govern the entire period between the commencement and end of the receivership proceeding. We therefore conclude that it prohibits recovery of prejudgment interest for the period indicated. If a covered claim is approved but payment is withheld, however, we see nothing in the statutes that precludes recovery of prejudgment interest, commencing with the date covered claims became due and payable as a class in the regular course of the receivership proceeding as provided in article 21.28, sections 7A and 8.

Nothing in articles 21.28 and 21.28-C expressly purports to preclude attorney=s fees and postjudgment interest in cases where payment is withheld after a receiver=s covered-claim determination has become final and binding and the claimant is forced to sue to recover the amount of his contract debt. Were such ancillary sums denied, we believe it would in practical effect negate the claimant=s statutory right to the Afull amount@ of his covered claim, reducing the amount of the claim by the time value of the money involved and the attorney=s fees required to collect it. Consequently, we believe Berkel was entitled to the statutory attorney=s fees and statutory postjudgment interest for which he prayed, and the trial-court judgment constitutes an abuse of discretion for denying those sums. The Association=s fundamental challenge to Berkel=s claim was that it was not a Acovered claim@ within the pertinent statutes. The trial court properly

**17**

rejected that challenge.  Berkel has prevailed on its action to enforce the contract alleged.  No reason appears in the record for denying Berkel=s claim for statutory attorney=s fees and postjudgment interest.  We hold accordingly.

## REMAINING ASSIGNMENTS OF ERROR

The Association brings several additional assignments of error.  These are directed at a trial-court order that overruled the Association=s special exceptions levelled at Berkel=s motion for summary judgment, a supporting affidavit that accompanied the motion, and Berkel=s affidavit opposing the Association=s motion for summary judgment.

### Berkel=s Motion for Summary Judgment

We believe we may, by analogy, appraise the sufficiency of Berkel=s motion for summary judgment under the rules applicable to pleadings.  Rule 45 requires Aa statement in plain and concise language of the plaintiff=s cause of action or the defendant=s grounds of defense.@ Tex. R. Civ. P. 45(b). Rule 47 demands Aa short statement of the cause of action sufficient to give *fair notice* of the claim involved.@ Tex. R. Civ. P. 47(a) (emphasis added).  AFair notice@ requires information sufficient to enable the adverse party to prepare a responsive pleading and prepare for trial.  (Only the first is applicable in the summary judgment context where the adverse party may file a response to the motion for summary judgment and no evidence is taken at the hearing in which the motion is determined.)  The adverse party is not, however, expected to place upon the movant=s language every construction that it will possibly bear: the movant=s language must be understood in its ordinary meaning.  In assessing the sufficiency of that language

to give fair notice, a court is guided by two competing factors: the intent of the rules to simplify pleadings and eliminate technicalities; and, the fact that a fair trial is impossible unless both parties and the court understand the basic controversy to be determined. 2 *Texas Civil Practice* ' 7:4, 129-131 (Diane M. Allen et al. eds., 1992 ed.) (Roy W. McDonald, orig. ed.). AThe test should be whether an opposing attorney of reasonable competence, perusing the pleadings, can ascertain the nature and the basic issues of the controversy.@ *Id*. at 131; *see, e.g.*, *Garvey v. Vawter*, 795 S.W.2d 741, 742 (Tex. 1990); *Thomas v. Cisneros*, 596 S.W.2d 313, 316 (Tex. Civ. App.CAustin 1980, writ ref=d n.r.e.).

While the Association levelled numerous special exceptions at Berkel=s motion, it complains on appeal that the trial judge abused her discretion in overruling only five, namely: that Berkel=s motion failed to: (1) state the elements of a covered claim; (2) distinguish between the Receiver and the Association; (3) distinguish between Berkel and John W. Berkel in his individual capacity; (4) identify the subsisting final judgment upon which Berkel based a claim that he was entitled to prejudgment interest by reason of res judicata; and, (5) state the grounds upon which Berkel claimed a right to summary judgment.

Items one and two are based on the Association=s erroneous premise that Berkel sued in the present cause to establish a covered claim as an original matter. In its motion, Berkel spelled out the relationship between the Receiver and the Association as we have summarized it previously. The Association=s assumption of the Receiver=s obligations under the agreed order and relevant statutory provisions is an undisputed fact in the summary judgment record.

Concerning item three above, we observe that Berkel=s motion is replete with references to both Berkel and John W. Berkel in his individual capacity, but the two names are not, as the Association

contends, used Ainterchangeably@ in the sense that the motion averred a right to duplicate recoveries. We believe the Association could not have been misled in this regard. The exact relationship between the two plaintiffs is set out in the motion, John W. Berkel=s accompanying affidavit, and the balance of the summary judgment record.

Item four does complain, we believe correctly, of a want of fair notice in the matter of res judicata. Any error was harmless, however, because we have held that Berkel might be entitled to a part of its claim to prejudgment interest on the independent ground that such a recovery is authorized under the pertinent statutory provisions discussed previously.

We disagree with the contention in item five that Berkel=s motion failed to give fair notice of the ground upon which it requested judgment as a matter of law. Following a lengthy recitation of the facts surrounding and giving rise to the present litigation, Berkel=s motion recited as follows:

> Accordingly, Plaintiffs seek judgment against Defendants for the amount of the previously approved covered claim and for [attorney=s fees] reasonably and necessarily occurred [sic] in this cause, pre- and post-judgment interest as may be allowed in law, costs of court and all other relief to which Plaintiffs may be entitled.
>
> . . . .
>
> The issues in dispute in this cause relate to the legal liability, if any, of [the Association] for interest and attorney=s fees on a previously approved claim.
>
> . . . .
>
> Accordingly, Plaintiffs move the Court to make a legal determination on whether or not the Guaranty Fund is liable for interest and attorney=s fees incurred in the prosecution of the instant suit to collect an approved claim. These are legal questions and not factual questions.

We believe the foregoing is plainly sufficient to give fair notice, in the requisite sense of that term, regarding the ground upon which Berkel asked for summary judgment.

We hold the trial judge did not abuse her discretion in overruling the special exceptions made by the Association against Berkel=s motion for summary judgment.

### Berkel=s Affidavits

The Association objected to an affidavit filed by Berkel in support of its motion for summary judgment and another affidavit, almost identical, filed in opposition to the Association=s motion for summary judgment. The Association urged the following objections against the affidavits:

*The affidavits set forth unfounded legal conclusions unsupported by facts.* Berkel requested summary judgment on its cause of action to recover the principal amount of the covered claim as a debt owing under a contract evidenced by the various documents mentioned previously. The execution and delivery of those documents are not disputed in the summary judgment record. Similarly, Berkel=s motion requested summary judgment on its related claims for attorney=s fees and interest, averring that A[t]hese are legal questions and not factual questions@ under the relevant statutory provisions. Given the averments in the motion, it appears that the Alegal conclusions@ made by Berkel in the affidavits were at best redundant as being no more than legal argument. They were irrelevant to the trial judge=s decision, which merely required applying the relevant statutory provisions to the undisputed facts in the record. Any error was therefore harmless.

*The affidavits were ambiguous in failing to distinguish between Berkel and John W. Berkel in his individual capacity and between the Association and the Receiver.* The Association cites

as an example of the first defect the fact that the Aproof of claim filed by Plaintiffs herein is attached@ to the affidavit but on its face the proof of claim is one filed by John W. Berkel, P.C., and not by Berkel in his individual capacity. Continuing, the Association points to the ambiguity raised by the statement that APlaintiffs@ had performed all their obligations under the contract while elsewhere the affidavit implies that the professional corporation alone owned the claim; and, the Association makes the same charge of ambiguity against statements in the affidavit that the APlaintiffs@ executed the release, made demand for payment, and claimed the contract debt. We believe that a reasonably competent attorney could have understood whatever distinctions were necessary to ascertain the nature of the controversy and the ground upon which Berkel requested judgment as a matter of law.

In the Association=s complaint of ambiguity in Berkel=s failure to distinguish between the Association and the Receiver, the Association complains, for example, that AMr. Berkel stated in both Affidavits that >a true and correct copy of the approval and decision of the receiver and [the Association] is attached hereto as Exhibit C,=@ but the document referred to is signed by the Receiver alone. The Association makes similar complaints against Berkel=s statement that both the Association and the Receiver issued the $6,306 check and that a demand was made upon both the Association and the Receiver. The remaining complaints are of the same character.

We believe it is abundantly clear from Berkel=s motion and response, and the affidavit that accompanied each, that Berkel=s claim against the Association derived from the statutory provisions and agreed order wherein the Association assumed the Receiver=s obligations regarding covered claims. Moreover, we believe the Association was not misled; it filed its special exceptions more than three years

**22**

after the Apartial@ summary judgment reached by agreement of the parties as to Berkel=s claims against the Receiver. We conclude the affidavits are not defective for failing to give fair notice sufficient for the Association to understand the nature of the controversy and to respond to Berkel=s affidavits.

We overrule the Association=s remaining points of error.

For the reasons stated above, we reverse that part of the judgment denying Berkel=s claim for attorney=s fees, prejudgment interest, and postjudgment interest. We sever those claims from the remainder of the judgment and remand them to the trial court for further proceedings not inconsistent with our opinion and with an instruction that Berkel=s entitlement to prejudgment interest, if any, be determined in accordance with the limitation we have placed on that claim, namely: it may be recovered only for the period beginning with the date covered claims became due and payable in the regular course of the receivership proceeding and ending with the trial-court judgment. We affirm the balance of the judgment.

John E. Powers, Justice

Before Justices Yeakel, Patterson and Powers[*]

Affirmed in Part; Reversed and Remanded in Part

Filed: November 7, 2002

Publish