TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-02-00754-CV






Raza M. Devji, Appellant


v.


Christopher B. Keller, Mark E. Keller, and Kibo Development Corporation, Appellees







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 201ST JUDICIAL DISTRICT

NO. GN203263, HONORABLE W. JEANNE MEURER, JUDGE PRESIDING





M E M O R A N D U M O P I N I O N




 This is the second chapter in the ongoing dispute between appellant Raza M. Devji
and appellees Christopher B. Keller and Mark E. Keller ("the Kellers") over the management of Kibo
Development Corporation. (1) Devji and the Kellers were directors and shareholders of Kibo. 
Following a history of disagreement regarding Kibo transactions and its management, Devji sued
the Kellers and Kibo in 1998, alleging a number of causes of action. The Kellers prevailed in that
lawsuit, and we affirmed. Devji v. Keller, No. 03-99-00436-CV (Tex. App.--Austin Dec. 21, 2000,
no pet.) (not designated for publication), 2000 Tex. App. LEXIS 8491. Still dissatisfied with the
Kellers' management of the corporation and specifically with their failure to repay a loan that Devji
personally guaranteed, Devji again sued the Kellers and Kibo, alleging various claims. Kibo and the
Kellers moved for summary judgment, asserting four affirmative defenses in response to Devji's
causes of action: res judicata, limitations, lack of standing, and impermissible collateral attack on
a final judgment. The trial court granted the summary judgment, and Devji appeals. We reverse and
remand to the trial court those portions of the summary judgment adjudicating Devji's breach of a
final judgment cause of action, wherein he challenges his removal as a Kibo director, and affirm the
summary judgment as to all his other claims.


BACKGROUND (2)


 In February 1997, Devji sought the legal services of Christopher Keller, an attorney,
to incorporate Kibo Development Corporation, a real estate investment company, along with a
number of subsidiaries. Devji was initially named chief executive officer and treasurer of the
company, and Christopher was appointed director, president, and secretary. Mohamed Raza
Yusufali was also initially a Kibo director.

 On March 25, 1997, Christopher Keller prepared a letter agreement between
Mohamed Raza Yusufali, his wife Razia M. R. Yusufali, Kibo, and Devji. Under the terms of the
agreement, the Yusufalis were to lend Kibo $100,000 by April 30, 1997. The loan was for a period
of two years. Kibo was to use the funds for the purchase and development of a fourteen-acre parcel
of property referred to as the "Torenko parcel." As security for the debt, Kibo was to provide a
promissory note secured by a secondary lien on the Torenko parcel. On April 14, in accordance with
the letter agreement, Kibo executed a promissory note in the amount of $100,000, bearing interest
at the rate of twelve percent per annum, in favor of the Yusufalis. Devji personally guaranteed this
debt. The Yusufalis advanced $70,000 of the promised funds to Kibo, but Kibo did not acquire the
Torenko parcel and never granted the Yusufalis the promised security interest. Moreover, the funds
were not used to acquire the Torenko parcel.

 In August 1998, after a number of disputes regarding the management and financing
of Kibo and other subsidiaries, Devji sued Kibo, Christopher Keller, and Mark Keller for among
other causes of action, negligence, breach of contract, breach of fiduciary duties, and fraud relating
to the operation of Kibo (the 1998 lawsuit). Following a jury trial, the trial court rendered judgment
in favor of Kibo and the Kellers. In the judgment, the trial court granted an equitable lien and
constructive trust in favor of the Kellers and Kibo on Devji's interest in any dividends, distributions,
or proceeds of any transfer of Devji's stock, shareholdings, or other interest in Kibo and its assets;
all dividends, distributions, and proceeds were first to be applied toward satisfaction of the judgment
in favor of the Kellers and Kibo. The judgment also declared Devji's and the Kellers' ownership
interests in Kibo. Devji's share certificates, however, were to be delivered to the registry of the court
subject to the equitable lien and constructive trust imposed by the judgment. Devji and the Kellers
were named as the sole directors of Kibo until changed by a unanimous vote of the directors. (3)

 Because Kibo's directors were deadlocked in managing the corporation, the trial court
also appointed a receiver for the assets of Kibo, pursuant to article 7.05 of the Texas Business
Corporation Act. Tex. Bus. Corp. Act Ann. art. 7.05 (West 2003). The receiver was to liquidate
Kibo's assets, distribute the proceeds, and dissolve Kibo within a year of the judgment. The
proceeds were to be distributed as follows: fifty percent to Devji and twenty-five percent to each of
the Kellers; Devji's share, however, was to be applied to the judgment rendered against him. This
Court affirmed the judgment.

 Before the receiver completely liquidated and dissolved Kibo, Christopher Keller
executed on the judgment against Devji and acquired all of his stock in Kibo. On November 8, 2000,
the receiver filed his final report and motion to terminate the receivership and discharge the receiver. 
The receiver had not dissolved Kibo; however, he claimed that the need for a receiver no longer
existed, as Christopher Keller's acquisition of Devji's stock remedied the deadlock in Kibo's
management. Devji contested the termination of the receivership, claiming that the receiver should
first repay the Yusufalis' $70,000 loan. (4) The trial court held a hearing on the receiver's motion and
instructed the receiver to investigate the Yusufalis' claim against Kibo for the $70,000 loan and to
issue a recommendation after completing his investigation.

 The receiver invited all interested parties to submit documentation relating to the
claim. On January 29, 2001, after reviewing the submitted documentation, the receiver filed with
the trial court his report addressing the Yusufalis' claim. In his report, the receiver concluded that
he could not "confirm that Devji had the power to act on behalf of Kibo to enter into a loan
transaction for Kibo, or that any part of the alleged $70,000 loan from Yusufali was actually funded
to Kibo, as opposed to being received by and used by Devji personally." The receiver additionally
concluded that because Yusufali was a director of Kibo, he bore a higher burden of proof in seeking
to enforce a transaction against Kibo. According to the receiver, without supporting documentation,
"the controversy is reduced to an old fashioned swearing match between Mr. [Christopher] Keller
and Mr. Devji." The receiver therefore opined that he should not pay the Yusufalis' claim, and
instead, the "matter should be resolved by a court of competent jurisdiction based on evidence
presented and arguments made pursuant to the rules of evidence and in accordance with the rules of
civil procedure." The Kellers also filed a motion to terminate the receivership and discharge the
receiver in January 2001; they too claimed that with Christopher Keller's acquisition of Devji's stock
a deadlock in the management of Kibo no longer existed and therefore the need for a receiver no
longer existed.

 On January 31, the trial court rendered an order terminating the receivership and
discharging the receiver. The trial court determined that the conditions justifying the appointment
of a receiver no longer existed. But because Kibo remained solvent, the trial court ordered Kibo's
assets be restored to its shareholders, the Kellers, instead of dissolving the corporation. Devji did
not appeal this order.

 On September 9, 2002, Devji sued the Kellers and Kibo again, listing a number of
causes of action against them. He also included the Yusufalis as defendants in his petition, although
he asserted no claims against them. In his prayer for relief, Devji sought from Kibo payment of the
$70,000 debt to the Yusufalis, his release as guarantor of the debt, actual and exemplary damages,
dissolution of Kibo pursuant to the trial court's judgment, an accounting of the proceeds resulting
from the dissolution of Kibo, and his reinstatement as a director of Kibo. The Kellers and Kibo filed
a response and a motion for summary judgment, asserting the affirmative defenses of res judicata,
limitations, lack of standing, and impermissible collateral attack on a final judgment. The trial court
granted the summary judgment without specifying the basis for its decision, and this appeal follows.


DISCUSSION


Standard of Review

 In reviewing a summary judgment in which the trial court has not provided the
specific basis for its decision, we must review each argument asserted in the motion and affirm the
trial court's judgment if any of these arguments is meritorious. See Star-Telegram, Inc. v. Doe, 915
S.W.2d 471, 473 (Tex. 1995). The standards that we use to review summary judgments are well
established: (1) the movant for summary judgment has the burden of showing that no genuine issue
of material fact exists and that he is entitled to judgment as a matter of law; (2) in deciding whether
there is a disputed material fact issue precluding summary judgment, evidence favorable to the
non-movant will be taken as true; and (3) every reasonable inference must be drawn in favor of the
non-movant and any doubts resolved in his favor. See Nixon v. Mr. Prop. Mgmt. Co., 690 S.W.2d
546, 548-49 (Tex. 1985). When the movant relies on an affirmative defense, he must establish each
element of the defense as a matter of law. See Johnson & Johnson Med., Inc. v. Sanchez, 924
S.W.2d 925, 927 (Tex. 1996). 

 We note at the outset that we have diligently reviewed the record filed with this Court
and have attempted to understand Devji's specific causes of action. His petition, however, consists
of thirty-one pages and over two hundred paragraphs and lists myriad general complaints without
sufficient specificity or factual support to convey clearly his causes of action or requests for relief. 
His appellate brief also fails to elucidate clearly his claims for relief and the bases for his claims. 
We will therefore analyze the application of appellees' affirmative defenses to those claims that we
can decipher from Devji's pleadings. 


Standing

 By his tenth issue, Devji asserts that appellees failed to conclusively prove each
element of their affirmative defense of lack of standing. In their motion for summary judgment,
appellees asserted that because Devji is a guarantor of the $70,000 debt owed by Kibo to the
Yusufalis and has not paid that debt, he lacks standing to sue for any relief concerning that debt.

 Standing requires that there "(a) shall be a real controversy between the parties, which
(b) will be actually determined by the judicial declaration sought." Texas Ass'n of Bus. v. Texas Air
Control Bd., 852 S.W.2d 440, 446 (Tex. 1993) (quoting Board of Water Eng'rs v. City of San
Antonio, 283 S.W.2d 722, 724 (Tex. 1955)). Because standing is a component of subject matter
jurisdiction, we consider Devji's standing under the same standard by which we review subject
matter jurisdiction. Id. Under that standard, Devji must allege facts that affirmatively demonstrate
the court's jurisdiction to hear the cause. Id. (citing Richardson v. First Nat'l Life Ins. Co., 419
S.W.2d 836, 839 (Tex. 1967)); see also Lovato v. Austin Nursing Ctr., Inc., No. 03-02-00505-CV,
2003 Tex. App. LEXIS 4725, at *14 (Tex. App.--Austin 2003, no pet. h.).

 In his second amended petition, Devji sued Kibo for a number of claims relating to
the $70,000 loan, including breach of promissory note and guaranty, breach of contract, and
promissory estoppel. In addition, he sued Christopher Keller and Mark Keller for fraud and statutory
fraud, contending that they assured the Yusufalis that Kibo would repay the $70,000 loan when they
had no intention of authorizing Kibo's repayment of the loan. Devji also sued Christopher Keller
for DTPA violations, see generally Tex. Bus. & Comm. Code Ann. §§ 17.41-.63 (West 2002),
claiming that Christopher Keller concealed the fact that he would resist Kibo's repayment of the
$70,000 loan to the Yusufalis. We will examine these claims relating to the $70,000 loan
collectively in assessing Devji's standing to sue.

 It is undisputed that Devji executed a guaranty in favor of the Yusufalis for Kibo's
$70,000 debt; however, he never alleged he paid the $70,000 debt. A guarantor's right of recourse
arises only when he pays the debt. Bank of El Paso v. T.O. Stanley Boot Co., 809 S.W.2d 279, 290
(Tex. App.--El Paso 1991) (citing Crimmins v. Lowry, 691 S.W.2d 582, 585 (Tex. 1985)), aff'd in
part and rev'd in part on other grounds, 847 S.W.2d 218 (Tex. 1992). In his response to appellees'
motion for summary judgment, Devji did not assert that he paid the $70,000 debt. Nor did he assert
that the Yusufalis have sought to enforce against Devji either the $100,000 note that Devji
guaranteed or repayment of the $70,000 that the Yusufalis actually advanced to Kibo. Indeed, Devji
claims that the debt continues to accrue interest because it has not been paid. Because Devji has not
paid the debt, he has no standing to sue for recovery of the $70,000 debt. The fact that he may
become liable and have to pay under the guaranty is only speculative at this point. Id. We overrule
Devji's tenth issue.

Res Judicata

 By his eleventh issue, Devji asserts that appellees failed to present and conclusively
prove each essential element of their res judicata affirmative defense. In their summary judgment
motion, appellees maintained that Devji's claims in this suit arose out of the same transactions or
series of transactions made the basis of the claims that he asserted in his 1998 lawsuit. 

 Res judicata "prevents the relitigation of a claim or cause of action that has been
finally adjudicated, as well as related matters that, with the use of diligence, should have been
litigated in the prior suit." Barr v. Resolution Trust Corp., 837 S.W.2d 627, 628 (Tex. 1992). Res
judicata requires proof of the following elements: (1) a prior final judgment on the merits by a court
of competent jurisdiction; (2) identity of parties or those in privity with them; and (3) a second action
based on claims that were raised or could have been raised in the first action. Amstadt v. United
States Brass Corp., 919 S.W.2d 644, 652 (Tex. 1996). Because appellees raised res judicata as an
affirmative defense in their summary judgment motion, they bore the burden of proving each of these
elements conclusively. See Johnson & Johnson Med., 924 S.W.2d at 927. The parties join issue
over the third element.

 Texas applies a transactional approach to determining what claims are barred by res
judicata. Barr, 837 S.W.2d at 630-31. Under this approach, a final judgment on an action
extinguishes the right to bring suit on the transaction, or series of connected transactions, out of
which that action arose. Id. at 631. A determination of what constitutes the subject matter of a suit
requires an examination of the factual matters that make up the gist of the complaint in the prior
litigation without regard to the form of the action. Id. at 630. The determination is to be made
pragmatically, giving weight to such considerations as whether the facts are related in time, space,
origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a trial
unit conforms to the parties' expectations or business understanding or usage. Id. at 631.

 Appellees attached to their motion for summary judgment a copy of Devji's seventh
amended petition in the 1998 lawsuit. We will compare Devji's causes of action in the current suit
to those asserted in his 1998 lawsuit to determine whether his latest claims were raised or could have
been raised in the 1998 action. (5)


 A. Claims Against Kibo and the Kellers

 Devji sued the Kellers and Kibo for breach of a final judgment, participating in a
fraudulent scheme to breach the final judgment, and for an accounting of Kibo's funds. We initially
note that Devji cites no authority, and we have found none, supporting his claim for "breach of a
final judgment." In the prayer for relief included at the end of his petition, Devji sought dissolution
of Kibo and a complete accounting of its funds. He also sought reinstatement as a director. We will
therefore refer generally to his requests for relief and determine whether these requests are barred
by res judicata.

 Devji alleged in his petition that the 1998 final judgment directed the complete
dissolution of Kibo so that the proceeds would be allocated half to Devji and half to the Kellers with
Devji's portion to be payable to the judgment debtors from the 1998 lawsuit. According to Devji,
a complete accounting of Kibo's surplus funds was necessary after dissolution to ascertain how much
of Devji's half of the surplus funds was used to pay his judgment debt. Devji claimed that the
Kellers, by their fraudulent conduct, prevented Kibo's dissolution by having the receivership
terminated prematurely and taking control of Kibo. He further claimed that the Kellers failed to
provide an accounting as specified in the final judgment and violated provisions in the final
judgment by voting him out as a director of Kibo, when the judgment clearly states that Devji and
the Kellers are to remain Kibo's directors until changed by a unanimous vote by the directors.

 The factual allegations underlying each of these requests for relief did not arise until
after the rendition of judgment in the 1998 lawsuit. Indeed, these claims stem from the Kellers'
alleged conduct in preventing the enforcement of the 1998 final judgment. Thus, they could not have
been raised during the 1998 lawsuit, and are not barred by the affirmative defense of res judicata. 
We sustain Devji's eleventh issue in part as it relates to these claims.


 B. Claims Against Christopher Keller

 In the present case, Devji alleged that he had an attorney-client relationship with
Christopher Keller between January and June 1997. As his attorney, Christopher Keller had a duty
to warn Devji about the consequences of being a personal guarantor on a loan, according to Devji. 
In addition, Devji contended that Christopher Keller owed Devji a duty of loyalty, a duty to refrain
from self-dealing, a duty not to conceal matters that might influence Devji's actions, a duty to
represent Devji with undivided loyalty and to inform him of material facts as soon as a conflict
arises, and a duty to fully disclose every facet of the proposed loan transaction between the
Yusufalis, Devji, and Kibo. According to Devji, Christopher Keller concealed or failed to disclose
that Kibo might not be required by law to repay the Yusufalis' loan.

 Devji also alleged in his petition that in 1998, Christopher Keller misrepresented facts
to induce Devji to execute the 1998 Shareholder Agreement, which resulted in the replacement of
Yusufali as a Kibo director with Mark Keller. Consequently, the Kellers acquired a majority on
Kibo's board of directors, removed Devji from his management position at Kibo, and took complete
control of Kibo's assets. Based on these allegations, Devji sued Christopher Keller for fraud,
statutory fraud, and violations of the warranty provisions of the DTPA.

 In his 1998 lawsuit, Devji alleged generally that the Kellers had mismanaged Kibo. 
He also complained of Christopher Keller's conduct while he represented Devji as an attorney,
contending that Christopher Keller breached his duties by advancing his personal interests to unjustly
enrich himself, by taking advantage of Devji's lack of knowledge, ability, experience, or capacity
to an unfair advantage, by conspiring with Mark Keller and others to defraud Devji and the
Yusufalis, and by misrepresenting that he and Mark Keller had the financial resources and abilities
to meet their obligations pursuant to the Shareholder Agreements.

 In addition, Devji alleged that Christopher Keller made fraudulent misrepresentations
in order to induce Devji to sign the 1998 Shareholder Agreement, naming Mark Keller as a Kibo
director. Afterwards, the Kellers without cause or justification terminated Devji's services as CEO
of Kibo and refused to continue to pay him his management fees. Based on these allegations (and
others not relevant here), Devji sued Christopher Keller for negligence, breach of fiduciary duties,
fraud, conspiracy, breach of warranty, violations of the DTPA, and other causes of action. In his
prayer for relief, Devji requested repayment by Kibo of the amounts advanced to Kibo by Devji and
the Yusufalis.

 We hold that the factual allegations underlying Devji's claims against Christopher
Keller that relate to his conduct as an attorney and his failure to inform Devji about the consequences
of personally guaranteeing a loan stem from the same series of transactions that motivated Devji to
sue Christopher Keller in 1998. The facts underlying both complaints relate to Christopher Keller's
alleged failure to fulfill his duties as an attorney and his alleged attempts to defraud Devji by
concealing facts relating to his management of Kibo's finances. In addition, Devji's allegations
regarding the 1998 Shareholder Agreement, the appointment of Mark Keller as a director, and the
termination of his managerial duties were all part of his 1998 lawsuit. Thus, we hold that Devji's
claims against Christopher Keller were either finally adjudicated or with the use of diligence should
have been litigated in the 1998 lawsuit.


 C. Claims Against Mark Keller

 In his second lawsuit, Devji accused Mark Keller of committing the same fraudulent
acts he asserted against Christopher Keller; that is, that Mark Keller conspired to defraud Devji by
not repaying the Yusufalis for the $70,000 loan and by unjustly converting Kibo's funds for the
Kellers' own personal use instead of repaying the loan. Devji further claimed that Mark Keller
concealed from Devji the fact that Mohamed Raza Yusufali was still a director of Kibo and induced
Devji to execute a shareholder agreement replacing Yusufali with Mark Keller. He sued Mark Keller
for fraud and statutory fraud.

 In the 1998 lawsuit, Devji accused Mark Keller of fraud and constructive fraud,
claiming that he made false statements to Devji with the intent that Devji would rely on these false
statements to his detriment and that he failed to disclose all material information regarding his and
Christopher Keller's financial ability to meet the commitments they undertook pursuant to the April
7, 1998 Shareholder Agreement. He further claimed that Mark Keller's true intent in executing the
Shareholder Agreement, which was not disclosed to Devji, was to sabotage Kibo's operations and
force its liquidation.

 We hold that Devji's current claims against Mark Keller arose out of the same factual
allegations that prompted his 1998 lawsuit against Mark Keller. Thus, these claims either were or
could have been tried in the 1998 lawsuit.


 D. Claims Against Christopher and Mark Keller, Jointly and Severally

 Unjust enrichment. In his latest lawsuit, Devji again generally claimed that by their
fraudulent acts, the Kellers unjustly enriched themselves at the expense of Devji. The facts he cited
in support of his assertion are that at the end of the 1998 jury trial, the jury found that since Kibo's
incorporation, Christopher Keller had advanced Kibo $80,500 and Mark Keller advanced $72,800. 
As of the termination of the receivership, however, the receiver returned to the Kellers $250,000. 
Thus, according to Devji, this surplus in funds evidences that the Kellers have been unjustly enriched
at his expense. In his 1998 lawsuit, Devji generally asserted that Mark and Christopher Keller were
unjustly enriched by profiting from their unfair transactions with Devji and Kibo and violating their
duty of good faith and fair dealing.

 In his pleadings in this cause, Devji did not clearly state what conduct he believes the
Kellers engaged in to unjustly enrich themselves. After the 1998 lawsuit, however, a receiver was
appointed to manage Kibo's business and assets, and therefore the Kellers could not have
mismanaged Kibo during that time. To the extent that Devji complains the surplus in funds was a
result of the Kellers' conduct in managing Kibo while they still controlled Kibo's business
transactions, we hold that allegation was adjudicated in the 1998 lawsuit and is barred by res
judicata. 

 Civil conspiracy. In both his latest lawsuit and the 1998 lawsuit, Devji alleged under
his civil conspiracy claim that the Kellers knowingly and intentionally conspired between themselves
and with others to carry out an unlawful purpose or a lawful purpose by unlawful means, causing
loss and injury to Devji and the Yusufalis. He did not describe, in either lawsuit, the facts that he
believes support his claim, except to say in the 1998 lawsuit that the Kellers' conspiratorial conduct
caused Devji and the Yusufalis to suffer losses by way of unsecured advances to Kibo and loss of
management income. We hold Devji's conspiracy claim was finally adjudicated or should have been
adjudicated in the 1998 lawsuit.

 In sum, we hold that all of Devji's claims, save his "breach of a final judgment"
claim, either were or could have been raised in his initial lawsuit and are thus barred by the doctrine
of res judicata. The trial court did not err in granting summary judgment based on this affirmative
defense. We sustain in part and overrule in part Devji's eleventh issue.


Collateral Attack

 By his fifth issue, Devji complains that the appellees did not sufficiently allege and
establish their affirmative defense of collateral attack to support summary judgment. Because we
have held that appellees established that most of Devji's claims were barred by either res judicata
or lack of standing, we need only consider the defense of collateral attack as it relates to Devji's
remaining cause of action--Devji's claim for breach of the final judgment.

 A collateral attack is "an attempt to avoid the effect of a judgment in a proceeding
brought for some other purpose." Spera v. Fleming, Hovenkamp & Grayson, P.C., 25 S.W.3d 863,
870 (Tex. App.--Houston [14th Dist.] 2000, no pet.) (quoting Gus M. Hodges, Collateral Attacks
on Judgments, 41 Tex. L. Rev. 163, 163-64 (1962)); accord Ranger Ins. Co. v. Rogers, 530 S.W.2d
162, 167 (Tex. Civ. App.--Austin 1975, writ ref'd n.r.e.). A collateral attack is impermissible if it
is instituted to interpret a prior judgment. Spera, 25 S.W.3d at 870-71.

 By his breach of a final judgment claim, Devji asserted that the final judgment
directed the complete dissolution of Kibo so that the proceeds would be allocated half to Devji and
half to the Kellers with Devji's portion to be payable to the judgment debtors. According to Devji,
a complete accounting of Kibo's surplus funds was necessary after dissolution to ascertain how much
of Devji's half of the surplus funds was used to pay his judgment debt. Devji claimed that the
Kellers prevented Kibo's dissolution by having the receivership terminated prematurely and taking
control of Kibo. He further claimed that the Kellers failed to provide an accounting as specified in
the final judgment and violated the provision in the final judgment that names Devji as one of Kibo's
directors until changed by a unanimous vote of the Kibo directors. Appellees respond that Devji is
attempting to collaterally attack the order terminating the receivership and discharging the receiver,
which he never appealed.

 Reinstatement as a Kibo director. The judgment in the 1998 lawsuit clearly states
that Devji shall be a director of Kibo until changed by a unanimous vote of the directors. The
Kellers argued at the summary judgment hearing that the judgment obviously included a clerical
error and should have instead stated that Devji would remain a director of Kibo until changed by a
unanimous vote of the shareholders, not the directors. The Kellers informed the trial court that they
had filed a motion for judgment nunc pro tunc to correct this error. Even if the Kellers' motion was
granted, however, a judgment nunc pro tunc was not included as part of the summary judgment
evidence and therefore could not be considered by either the trial court or by this Court. We hold
that by seeking reinstatement as a director of Kibo pursuant to the 1998 judgment, Devji is not
attempting to avoid the effect of the final judgment in the 1998 lawsuit. To the contrary, he is
relying on that judgment to support his claim that the Kellers have defied the judgment in removing
him as a director.

 Nor do we construe Devji's complaint as a collateral attack on the order terminating
receivership and discharging receiver. That order directs the receiver to deliver possession of Kibo's
assets to the proper officers, directors, or shareholders of Kibo. Devji claimed he should be a
director of Kibo based on the 1998 final judgment. He alleged that the Kellers have wrongfully
removed him as a director, and therefore he was deprived of his share of Kibo's assets. (6) He did not
seek to avoid the effect of that order.

 Dissolution of Kibo. We reach a different conclusion with regard to Devji's request
for dissolution of Kibo. The judgment in the 1998 lawsuit appoints a receiver "of the assets and
business of Kibo" pursuant to section 7.05 of the business corporation act. See Tex. Bus. Corp. Act
Ann. art. 7.05. Although the judgment includes among the receiver's duties dissolution of the
corporation, the principal effect of the judgment was to appoint a receiver under section 7.05 of the
act. Section 7.05 of the act governs appointment of a rehabilitative receiver "for the assets and
business of a corporation." Id. art. 7.05A; accord Mueller v. Beamalloy, Inc., 994 S.W.2d 855, 860
(Tex. App.--Houston [1st Dist.] 1999, no pet.). After the receiver sold most, if not all, of Kibo's
property, the receiver concluded that Kibo was a solvent corporation. Furthermore, because Devji
was no longer a shareholder in the corporation, there was no longer a deadlock in running the
corporation. Accordingly, the receiver recommended that the receivership be terminated and that
Kibo's remaining property and assets be redelivered to it. See Tex. Bus. Corp. Act Ann. art. 7.05B. 
These actions were consistent with the provisions of the business corporation act and with the
judgment. We hold Devji's request for dissolution of Kibo is an attempt to avoid the effect of the
trial court's order terminating the receivership and is therefore barred as an impermissible collateral
attack on a final judgment. Accordingly, we sustain in part and overrule in part Devji's fifth issue.


Limitations

 By his twelfth issue, Devji argues that appellees failed to conclusively prove their
affirmative defense of limitations. We have already held that the trial court did not err in rendering
summary judgment against Devji on all of his claims, save those that stem from the Kellers' alleged
conduct following the rendition of the 1998 judgment, resulting in Devji's removal as a Kibo
director. Appellees do not allege that Devji's "breach of judgment" claim is barred by limitations. 
Their limitations defense is limited to those claims that arise from the $70,000 loan. Thus, this issue
is moot, and we do not reach it.


Pleading Errors

 By his first issue, Devji alleges that the trial court erred in granting appellees' motion
for summary judgment and severance on causes of action that were not addressed in the motion. He
cites one paragraph in appellees' motion, in which appellees challenge Devji's standing to sue Kibo
based on the $70,000 debt because he never paid the debt. Relying on this one paragraph, Devji
concludes that appellees sought summary judgment only on his claims relating to the debt, and the
trial court erred in granting summary judgment as to all of his other claims that did not relate to the
debt.

 The first paragraph of appellees' motion for summary judgment, however, alleges that
the Kellers and Kibo are entitled to summary judgment as a matter of law "on all claims asserted
against them based on their affirmative defenses of res judicata, limitations, lack of standing and
impermissible collateral attack on a final judgment." (Emphasis added.) Thus, appellees' motion
was not limited to Devji's debt claims and his standing to sue. We overrule Devji's first issue.

 By his sixth issue, Devji asks whether appellees' motion for summary judgment
generally complied with rule of civil procedure 166a. (7) See Tex. R. Civ. P. 166a. By his second,
third, and fourth issues, Devji claims that appellees' assertions of their affirmative defenses of lack
of standing, limitations, and res judicata were not legally sufficient to satisfy the minimum
requirements under rule 166a.

 We may look to the pleading rules to assess appellees' motion for summary judgment. 
Berkel v. Texas Prop. & Cas. Ins. Guar. Ass'n, 92 S.W.3d 584, 594 (Tex. App.--Austin 2002, no
pet.). Rule of civil procedure 45 requires that pleadings "consist of a statement in plain and concise
language of the plaintiff's cause of action or the defendant's grounds of defense." Tex. R. Civ. P.
45; accord Berkel, 92 S.W.3d at 594. Rule 47 demands that pleadings contain "a short statement
of the cause of action sufficient to give fair notice of the claim involved." Tex. R. Civ. P. 47; accord
Berkel, 92 S.W.3d at 594. "'Fair notice' requires information sufficient to enable the adverse party
to prepare a responsive pleading and prepare for trial." Berkel, 92 S.W.3d at 594. "The test should
be whether an opposing attorney of reasonable competence, perusing the pleadings, can ascertain the
nature and the basic issues of the controversy." Id. (quoting 2 Texas Civil Practice § 7:4, 131 (Diane
M. Allen et al. eds., 1992 ed.) (Roy W. McDonald, orig. ed.)).

 In their motion for summary judgment, appellees asserted that they are entitled to
summary judgment on all claims alleged against them based on the affirmative defenses of res
judicata, limitations, lack of standing, and impermissible collateral attack on a final judgment. They
outlined certain key facts, referring to the 1998 lawsuit, the appointment of a receiver, the date of
Kibo's default under the 1997 letter agreement, and Devji's failure to pay the $70,000 debt. 
Appellees then provided a short argument in support of each of their affirmative defenses. Although
the motion was concise, we hold that the motion included information sufficient to enable an adverse
party to ascertain the nature and the basic issues of the controversy and to prepare a response. We
overrule issues two, three, four, and six.

 By his eighth issue, Devji questions whether appellees' appendix to their motion for
summary judgment complied with rule of civil procedure 166a(d). He fails to cite any authority,
present any argument or analysis, or direct us to any part of the appellate record. See Tex. R. App.
P. 38.1(h). Accordingly, he has waived this issue.

 By his ninth issue, Devji argues that the trial court erred in overruling his special
exceptions, by which he challenged appellees' appendix attached to their motion for summary
judgment. Attached to appellees' motion were Devji's seventh amended petition from the 1998
lawsuit, the jury charge in that lawsuit, the final judgment in that lawsuit, this Court's judgment
following appellate review of the trial court's judgment, the order terminating the receivership and
discharging the receiver, Christopher Keller's affidavit, and a copy of the trial court's docket sheet
from the 1998 lawsuit. Devji claims that these exhibits, along with appellees' request that the trial
court take judicial notice of the contents of the court's file in the 1998 lawsuit, are too voluminous
and vague to provide him fair notice of appellees' claims in their summary judgment motion. We
disagree.

 Appellees' claim of res judicata necessitated the inclusion of Devji's pleadings from
his 1998 lawsuit as well as the jury charge and the judgment, so that the trial court could determine
which of the claims in Devji's latest lawsuit had already been litigated or could have been litigated
in the 1998 suit. That Devji's pleading was so voluminous, consisting of 61 pages, was a result of
Devji's own drafting. Because Devji drafted this pleading himself, it is unlikely that Devji could not
decipher which of his current claims had already been litigated in his 1998 lawsuit. Similarly, the
jury charge, final judgment, and order terminating receivership were essential for the trial court's
determination of whether Devji's latest claims either had been or could have been adjudicated in the
1998 lawsuit as well as to determine whether Devji's claims constituted an impermissible collateral
attack on a judgment. Furthermore, the exhibits were not so voluminous, nor did they include an
unreasonable amount of collateral or irrelevant matter so as to be unwieldy. We overrule Devji's
ninth issue.


Procedural Errors

 By his fifteenth issue, Devji claims the trial court erred in permitting appellees'
attorney to introduce extrinsic summary judgment evidence during the summary judgment hearing. 
During the summary judgment hearing, appellees' counsel referred to the final judgment in the 1998
lawsuit, wherein the judgment states that Devji is a director of Kibo until changed by a unanimous
vote of the directors. Appellees' counsel informed the trial court during the summary judgment
hearing that there was an error in the judgment and that it should instead read that Devji is a director
of Kibo until changed by unanimous vote of the shareholders. He further stated that he had filed a
motion for judgment nunc pro tunc just before the summary judgment hearing. Devji complains that
appellees' counsel violated rule of civil procedure 166a(c), which states that no oral testimony shall
be received at the hearing. See Tex. R. Civ. P. 166a(c). Because we have already held that
appellees' affirmative defenses did not bar Devji's breach of final judgment claim as it relates to his
removal from the Kibo board of directors, this issue is now moot. Accordingly, we dismiss this issue
for mootness.

 By his thirteenth issue, Devji alleges that the trial court erred in failing to grant his
motion for continuance of the summary judgment hearing. He argues that the trial court should have
continued the hearing until appellees produced documents and provided answers to discovery. Devji
filed his petition in this cause on September 9, 2002, along with discovery requests. He sent
appellees additional discovery requests on October 4. Appellees filed their motion for summary
judgment on October 11, 2002, and a hearing on the motion was set for November 7. On October
28, Devji filed a motion for continuance of the motion for summary judgment hearing, arguing that
he needed the responses to his discovery requests before he could prepare a response to the summary
judgment motion. The trial court held a hearing on the motion for continuance on October 31. At
the end of that hearing, the trial court granted Devji's motion for continuance. The summary
judgment hearing was reset for November 14. During that time, appellees were to respond to Devji's
discovery requests that relate solely to the motion for summary judgment, so that Devji could use
that information to respond to the motion. At the November 14 hearing, Devji complained to the
trial court that appellees had not provided any discovery responses and the case was only thirty-one
days old; he requested another continuance, which the trial court denied.

 An appellate court does not disturb a trial court's order denying a motion for
continuance unless the trial court has committed a clear abuse of discretion. Villegas v. Carter, 718
S.W.2d 4, 5 (Tex. 1985); State v. Crank, 666 S.W.2d 91, 94 (Tex. 1984). A trial court abuses its
discretion when it reaches a decision so arbitrary and unreasonable as to amount to a clear and
prejudicial error of law. Johnson v. Fourth Court of Appeals, 700 S.W.2d 916, 917 (Tex. 1985). 
Before the reviewing court will reverse the trial court's ruling on a motion for continuance, it should
appear from the record that the trial court has disregarded the party's rights. Yowell v. Piper Aircraft
Corp., 703 S.W.2d 630, 635 (Tex. 1986); Royal Mortgage Corp. v. Montague, 41 S.W.3d 721, 738
(Tex. App.--Fort Worth 2001, no pet.). 

 Appellees filed a traditional motion for summary judgment, asserting that they had
conclusively established each of their affirmative defenses. They bore the burden of presenting
summary judgment evidence supporting their assertions. Devji does not specify what information
he sought through discovery that was necessary to his summary judgment response. Nor does he
explain how such information would have raised a question of fact as to any of appellees' affirmative
defenses or otherwise defeated appellees' summary judgment motion. We therefore conclude that
the trial court did not abuse its discretion in denying Devji's motion for continuance and overrule
his thirteenth issue.

 By his seventh issue, Devji complains of the trial court's severance of the causes of
action between Devji and appellees from the causes of action between himself and the Yusufalis. 
The rule of civil procedure regarding dropping parties and severing causes of action is broad; trial
courts enjoy great discretion in severing and proceeding separately with "any claim against a party." 
Tex. R. Civ. P. 41. A trial court's decision to grant a severance will not be disturbed unless the trial
court abused its discretion. Guaranty Fed. Savs. Bank v. Horseshoe Operating Co., 793 S.W.2d 652,
658 (Tex. 1990); Nicor Exploration Co. v. Florida Gas Transmission Co., 911 S.W.2d 479, 481
(Tex. App.--Corpus Christi 1995, writ denied). Severance of a claim is proper if (1) the controversy
involves more than one cause of action; (2) the severed claim is one that would be the proper subject
of a lawsuit if independently asserted; and (3) the severed claim is not so interwoven with the
remaining action that it involves the same facts and issues. Nicor Exploration Co., 911 S.W.2d at
481-82.

 In this case, Devji had not asserted any claims against the Yusufalis in his petition. 
Thus, he cannot show that the claims against them were so interwoven with those against appellees
as to render a severance an abuse of discretion. We therefore overrule Devji's seventh issue.

 By his fourteenth issue, Devji contends that he did not receive a fair and impartial
hearing before the trial court. For support, he states that the trial court judge ignored the summary
judgment requirements mandated by the rules of civil procedure, was "very biased" and gave the
appearance that she made up her mind before Devji even opened his mouth, and did not provide
Devji an opportunity to present his summary judgment evidence and arguments. The reporter's
record filed with this Court reveals otherwise.

 The United States Supreme Court has determined that "judicial rulings alone almost
never constitute a valid basis for a bias or partiality motion," and "judicial remarks during the course
of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases,
ordinarily do not support a bias or partiality challenge." Liteky v. United States, 510 U.S. 540, 555
(1994). Further, "[a] judge's ordinary efforts at courtroom administration--even a stern and
short-tempered judge's ordinary efforts at courtroom administration--remain immune." Id. at 556. 
In short, a trial court has the inherent power to control the disposition of cases "with economy of
time and effort for itself, for counsel, and for litigants." Landis v. North Am. Co., 299 U.S. 248, 254
(1936). 

 Similarly, the Texas Supreme Court has held that "the discretion vested in the trial
court over the conduct of a trial is great." Dow Chem. Co. v. Francis, 46 S.W.3d 237, 240 (Tex.
2001) (quoting Schroeder v. Brandon, 172 S.W.2d 488, 491 (Tex. 1943)). A trial court has the
authority to express itself in exercising this broad discretion. Id. at 240-41. Further, a trial court may
properly intervene to maintain control in the courtroom, to expedite the trial, and to prevent what it
considers to be a waste of time. Id. at 241.

 In his brief, Devji's only reference to the record is a citation to the entire transcript
of the summary judgment hearing. He fails to specify which, if any, of the trial court's comments
reflected its bias towards him. We have nevertheless reviewed the entire reporter's record, and
applying the aforementioned principles, we conclude that there is no evidence of judicial bias. 
Devji's fourteenth issue is overruled.

 By his final issue, Devji generally states that the trial court erred in granting
appellees' motion for summary judgment and severance. He cites no authority for this issue and
provides no argument. We therefore hold that he has waived this issue. See Tex. R. App. P. 38.1(h). 
We believe that we have nevertheless addressed this issue in our discussion above.


CONCLUSION


 We hold that appellees failed to establish as a matter of law that Devji's "breach of
a final judgment" claim, as it relates to his removal as a Kibo director, was barred by any of their
asserted affirmative defenses. All of Devji's remaining claims were barred by either res judicata,
lack of standing, or collateral attack of a final judgment, and the trial court did not err in granting
appellees' summary judgment on those claims. Accordingly, we reverse and remand the single
claim, wherein Devji challenges his removal as a Kibo director; we affirm the trial court's summary
judgment as it relates to all of Devji's remaining causes of action.



 

 Jan P. Patterson, Justice

Before Justices Kidd, Yeakel and Patterson

Affirmed in Part; Reversed and Remanded in Part

Filed: July 24, 2003

1. We will refer to appellees Christopher Keller, Mark Keller, and Kibo Development
Corporation collectively as "appellees" unless our discussion requires us to distinguish among them.
2. These background facts were taken from the parties' pleadings and summary judgment
evidence. Our factual summary includes some evidence that favors the judgment. But see Rhone-Poulenc, Inc. v. Steel, 997 S.W.2d 217, 223 (Tex. 1999) ("When reviewing a summary judgment,
we take as true all evidence favorable to the nonmovant."). We include this evidence only to provide
a context for the proceedings in the trial court; our factual summary should not be construed as a
conclusive finding of any fact. 
3. Appellees claim that this part of the judgment includes a clerical error and it should instead
read that Devji and the Kellers are the sole directors of Kibo until changed by a unanimous vote of
the shareholders, not the directors. We address this issue later in the opinion.
4. Although the $70,000 was allegedly advanced to Kibo pursuant to the $100,000 promissory
note, we refer to the loan throughout this opinion as the "$70,000 loan," since no one disputes that
the full $100,000 was never paid to Kibo.
5. We do not address those claims that Devji did not have standing to maintain, i.e., the
claims relating to the $70,000 loan.
6. We express no opinion as to whether Devji is actually entitled to any of Kibo's assets. Our
holding is limited to the issue of whether his claim that he was wrongfully removed as a director of
Kibo is an attempt to collaterally attack a final judgment.
7. Devji cites no authority, presents no argument, and cites us to no portion of the record in
support of this issue. He has therefore presented nothing for our review. See Tex. R. App. P.
38.1(h). We nevertheless address this issue in our discussion of his second, third, and fourth issues.