# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-02-00754-CV

**Raza M. Devji, Appellant**

**v.**

**Christopher B. Keller, Mark E. Keller, and Kibo Development Corporation, Appellees**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 201ST JUDICIAL DISTRICT
## NO. GN203263, HONORABLE W. JEANNE MEURER, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

This is the second chapter in the ongoing dispute between appellant Raza M. Devji and appellees Christopher B. Keller and Mark E. Keller ("the Kellers") over the management of Kibo Development Corporation.[1] Devji and the Kellers were directors and shareholders of Kibo. Following a history of disagreement regarding Kibo transactions and its management, Devji sued the Kellers and Kibo in 1998, alleging a number of causes of action. The Kellers prevailed in that lawsuit, and we affirmed. *Devji v. Keller*, No. 03-99-00436-CV (Tex. App.—Austin Dec. 21, 2000, no pet.) (not designated for publication), 2000 Tex. App. LEXIS 8491. Still dissatisfied with the Kellers' management of the corporation and specifically with their failure to repay a loan that Devji

---

[1] We will refer to appellees Christopher Keller, Mark Keller, and Kibo Development Corporation collectively as "appellees" unless our discussion requires us to distinguish among them.

personally guaranteed, Devji again sued the Kellers and Kibo, alleging various claims. Kibo and the Kellers moved for summary judgment, asserting four affirmative defenses in response to Devji's causes of action: *res judicata*, limitations, lack of standing, and impermissible collateral attack on a final judgment. The trial court granted the summary judgment, and Devji appeals. We reverse and remand to the trial court those portions of the summary judgment adjudicating Devji's breach of a final judgment cause of action and affirm the summary judgment as to all his other claims.

## BACKGROUND[2]

In February 1997, Devji sought the legal services of Christopher Keller, an attorney, to incorporate Kibo Development Corporation, a real estate investment company, along with a number of subsidiaries. Devji was initially named chief executive officer and treasurer of the company, and Christopher was appointed director, president, and secretary. Mohamed Raza Yusufali was also initially a Kibo director.

On March 25, 1997, Christopher Keller prepared a letter agreement between Mohamed Raza Yusufali, his wife Razia M. R. Yusufali, Kibo, and Devji. Under the terms of the agreement, the Yusufalis were to lend Kibo $100,000 by April 30, 1997. The loan was for a period of two years. Kibo was to use the funds for the purchase and development of a fourteen-acre parcel of property referred to as the "Torenko parcel." As security for the debt, Kibo was to provide a

---

[2] These background facts were taken from the parties' pleadings and summary judgment evidence. Our factual summary includes some evidence that favors the judgment. *But see Rhone-Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 223 (Tex. 1999) ("When reviewing a summary judgment, we take as true all evidence favorable to the nonmovant."). We include this evidence only to provide a context for the proceedings in the trial court; our factual summary should not be construed as a conclusive finding of any fact.

2

promissory note secured by a secondary lien on the Torenko parcel. On April 14, in accordance with the letter agreement, Kibo executed a promissory note in the amount of $100,000, bearing interest at the rate of twelve percent per annum, in favor of the Yusufalis. Devji personally guaranteed this debt. The Yusufalis advanced $70,000 of the promised funds to Kibo, but Kibo did not acquire the Torenko parcel and never granted the Yusufalis the promised security interest. Moreover, the funds were not used to acquire the Torenko parcel.

In August 1998, after a number of disputes regarding the management and financing of Kibo and other subsidiaries, Devji sued Kibo, Christopher Keller, and Mark Keller for among other causes of action, negligence, breach of contract, breach of fiduciary duties, and fraud relating to the operation of Kibo (the 1998 lawsuit). Following a jury trial, the trial court rendered judgment in favor of Kibo and the Kellers. In the judgment, the trial court granted an equitable lien and constructive trust in favor of the Kellers and Kibo on Devji's interest in any dividends, distributions, or proceeds of any transfer of Devji's stock, shareholdings, or other interest in Kibo and its assets; all dividends, distributions, and proceeds were first to be applied toward satisfaction of the judgment in favor of the Kellers and Kibo. The judgment also declared Devji's and the Kellers' ownership interests in Kibo. Devji's share certificates, however, were to be delivered to the registry of the court subject to the equitable lien and constructive trust imposed by the judgment. Devji and the Kellers were named as the sole directors of Kibo until changed by a unanimous vote of the directors.[3]

---

[3] Appellees claim that this part of the judgment includes a clerical error and it should instead read that Devji and the Kellers are the sole directors of Kibo until changed by a unanimous vote of the *shareholders*, not the directors. We address this issue later in the opinion.

Because Kibo's directors were deadlocked in managing the corporation, the trial court also appointed a receiver for the assets of Kibo, pursuant to article 7.05 of the Texas Business Corporation Act. Tex. Bus. Corp. Act Ann. art. 7.05 (West 2003). The receiver was to liquidate Kibo's assets, distribute the proceeds, and dissolve Kibo within a year of the judgment. The proceeds were to be distributed as follows: fifty percent to Devji and twenty-five percent to each of the Kellers; Devji's share, however, was to be applied to the judgment rendered against him. This Court affirmed the judgment.

Before the receiver completely liquidated and dissolved Kibo, Christopher Keller executed on the judgment against Devji and acquired all of his stock in Kibo. On November 8, 2000, the receiver filed his final report and motion to terminate the receivership and discharge the receiver. The receiver had not dissolved Kibo; however, he claimed that the need for a receiver no longer existed, as Christopher Keller's acquisition of Devji's stock remedied the deadlock in Kibo's management. Devji contested the termination of the receivership, claiming that the receiver should first repay the Yusufalis' $70,000 loan.[4] The trial court held a hearing on the receiver's motion and instructed the receiver to investigate the Yusufalis' claim against Kibo for the $70,000 loan and to issue a recommendation after completing his investigation.

The receiver invited all interested parties to submit documentation relating to the claim. On January 29, 2001, after reviewing the submitted documentation, the receiver filed with the trial court his report addressing the Yusufalis' claim. In his report, the receiver concluded that

---

[4] Although the $70,000 was allegedly advanced to Kibo pursuant to the $100,000 promissory note, we refer to the loan throughout this opinion as the "$70,000 loan," since no one disputes that the full $100,000 was never paid to Kibo.

he could not "confirm that Devji had the power to act on behalf of Kibo to enter into a loan transaction for Kibo, or that any part of the alleged $70,000 loan from Yusufali was actually funded to Kibo, as opposed to being received by and used by Devji personally." The receiver additionally concluded that because Yusufali was a director of Kibo, he bore a higher burden of proof in seeking to enforce a transaction against Kibo. According to the receiver, without supporting documentation, "the controversy is reduced to an old fashioned swearing match between Mr. [Christopher] Keller and Mr. Devji." The receiver therefore opined that he should not pay the Yusufalis' claim, and instead, the "matter should be resolved by a court of competent jurisdiction based on evidence presented and arguments made pursuant to the rules of evidence and in accordance with the rules of civil procedure." The Kellers also filed a motion to terminate the receivership and discharge the receiver in January 2001; they too claimed that with Christopher Keller's acquisition of Devji's stock a deadlock in the management of Kibo no longer existed and therefore the need for a receiver no longer existed.

On January 31, the trial court rendered an order terminating the receivership and discharging the receiver. The trial court determined that the conditions justifying the appointment of a receiver no longer existed. But because Kibo remained solvent, the trial court ordered Kibo's assets be restored to its shareholders, the Kellers, instead of dissolving the corporation. Devji did not appeal this order.

On September 9, 2002, Devji sued the Kellers and Kibo again, listing a number of causes of action against them. He also included the Yusufalis as defendants in his petition, although he asserted no claims against them. In his prayer for relief, Devji sought from Kibo payment of the

5

$70,000 debt to the Yusufalis, his release as guarantor of the debt, actual and exemplary damages, dissolution of Kibo pursuant to the trial court's judgment, an accounting of the proceeds resulting from the dissolution of Kibo, and his reinstatement as a director of Kibo. The Kellers and Kibo filed a response and a motion for summary judgment, asserting the affirmative defenses of *res judicata*, limitations, lack of standing, and impermissible collateral attack on a final judgment. The trial court granted the summary judgment without specifying the basis for its decision, and this appeal follows.

## DISCUSSION

**Standard of Review**

In reviewing a summary judgment in which the trial court has not provided the specific basis for its decision, we must review each argument asserted in the motion and affirm the trial court's judgment if any of these arguments is meritorious. *See Star-Telegram, Inc. v. Doe*, 915 S.W.2d 471, 473 (Tex. 1995). The standards that we use to review summary judgments are well established: (1) the movant for summary judgment has the burden of showing that no genuine issue of material fact exists and that he is entitled to judgment as a matter of law; (2) in deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true; and (3) every reasonable inference must be drawn in favor of the non-movant and any doubts resolved in his favor. *See Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548-49 (Tex. 1985). When the movant relies on an affirmative defense, he must establish each element of the defense as a matter of law. *See Johnson & Johnson Med., Inc. v. Sanchez*, 924 S.W.2d 925, 927 (Tex. 1996).

6

We note at the outset that we have diligently reviewed the record filed with this Court and have attempted to understand Devji's specific causes of action. His petition, however, consists of thirty-one pages and over two hundred paragraphs and lists myriad general complaints without sufficient specificity or factual support to convey clearly his causes of action or requests for relief. His appellate brief also fails to elucidate clearly his claims for relief and the bases for his claims. We will therefore analyze the application of appellees' affirmative defenses to those claims that we can decipher from Devji's pleadings.

**Standing**

By his tenth issue, Devji asserts that appellees failed to conclusively prove each element of their affirmative defense of lack of standing. In their motion for summary judgment, appellees asserted that because Devji is a guarantor of the $70,000 debt owed by Kibo to the Yusufalis and has not paid that debt, he lacks standing to sue for any relief concerning that debt.

Standing requires that there "(a) shall be a real controversy between the parties, which (b) will be actually determined by the judicial declaration sought." *Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993) (quoting *Board of Water Eng'rs v. City of San Antonio*, 283 S.W.2d 722, 724 (Tex. 1955)). Because standing is a component of subject matter jurisdiction, we consider Devji's standing under the same standard by which we review subject matter jurisdiction. *Id.* Under that standard, Devji must allege facts that affirmatively demonstrate the court's jurisdiction to hear the cause. *Id.* (citing *Richardson v. First Nat'l Life Ins. Co.*, 419 S.W.2d 836, 839 (Tex. 1967)); *see also Lovato v. Austin Nursing Ctr., Inc.*, No. 03-02-00505-CV, 2003 Tex. App. LEXIS 4725, at *14 (Tex. App.—Austin 2003, no pet. h.).

7

In his second amended petition, Devji sued Kibo for a number of claims relating to the $70,000 loan, including breach of promissory note and guaranty, breach of contract, and promissory estoppel. In addition, he sued Christopher Keller and Mark Keller for fraud and statutory fraud, contending that they assured the Yusufalis that Kibo would repay the $70,000 loan when they had no intention of authorizing Kibo's repayment of the loan. Devji also sued Christopher Keller for DTPA violations, *see generally* Tex. Bus. & Comm. Code Ann. §§ 17.41-.63 (West 2002), claiming that Christopher Keller concealed the fact that he would resist Kibo's repayment of the $70,000 loan to the Yusufalis. We will examine these claims relating to the $70,000 loan collectively in assessing Devji's standing to sue.

It is undisputed that Devji executed a guaranty in favor of the Yusufalis for Kibo's $70,000 debt; however, he never alleged he paid the $70,000 debt. A guarantor's right of recourse arises only when he pays the debt. *Bank of El Paso v. T.O. Stanley Boot Co.*, 809 S.W.2d 279, 290 (Tex. App.—El Paso 1991) (citing *Crimmins v. Lowry*, 691 S.W.2d 582, 585 (Tex. 1985)), *aff'd in part and rev'd in part on other grounds*, 847 S.W.2d 218 (Tex. 1992). In his response to appellees' motion for summary judgment, Devji did not assert that he paid the $70,000 debt. Nor did he assert that the Yusufalis have sought to enforce against Devji either the $100,000 note that Devji guaranteed or repayment of the $70,000 that the Yusufalis actually advanced to Kibo. Indeed, Devji claims that the debt continues to accrue interest because it has not been paid. Because Devji has not paid the debt, he has no standing to sue for recovery of the $70,000 debt. The fact that he may become liable and have to pay under the guaranty is only speculative at this point. *Id.* We overrule Devji's tenth issue.

8

*Res Judicata*

By his eleventh issue, Devji asserts that appellees failed to present and conclusively prove each essential element of their *res judicata* affirmative defense.  In their summary judgment motion, appellees maintained that Devji's claims in this suit arose out of the same transactions or series of transactions made the basis of the claims that he asserted in his 1998 lawsuit.

*Res judicata* "prevents the relitigation of a claim or cause of action that has been finally adjudicated, as well as related matters that, with the use of diligence, should have been litigated in the prior suit." *Barr v. Resolution Trust Corp.*, 837 S.W.2d 627, 628 (Tex. 1992). *Res judicata* requires proof of the following elements: (1) a prior final judgment on the merits by a court of competent jurisdiction; (2) identity of parties or those in privity with them; and (3) a second action based on claims that were raised or could have been raised in the first action. *Amstadt v. United States Brass Corp.*, 919 S.W.2d 644, 652 (Tex. 1996).  Because appellees raised *res judicata* as an affirmative defense in their summary judgment motion, they bore the burden of proving each of these elements conclusively. *See Johnson & Johnson Med.*, 924 S.W.2d at 927.  The parties join issue over the third element.

Texas applies a transactional approach to determining what claims are barred by *res judicata*. *Barr*, 837 S.W.2d at 630-31.  Under this approach, a final judgment on an action extinguishes the right to bring suit on the transaction, or series of connected transactions, out of which that action arose. *Id.* at 631.  A determination of what constitutes the subject matter of a suit requires an examination of the factual matters that make up the gist of the complaint in the prior litigation without regard to the form of the action. *Id.* at 630.  The determination is to be made

9

pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a trial unit conforms to the parties' expectations or business understanding or usage. *Id.* at 631.

Appellees attached to their motion for summary judgment a copy of Devji's seventh amended petition in the 1998 lawsuit. We will compare Devji's causes of action in the current suit to those asserted in his 1998 lawsuit to determine whether his latest claims were raised or could have been raised in the 1998 action.[5]

### A. Claims Against Kibo and the Kellers

Devji sued the Kellers and Kibo for breach of a final judgment, participating in a fraudulent scheme to breach the final judgment, and for an accounting of Kibo's funds. We initially note that Devji cites no authority, and we have found none, supporting his claim for "breach of a final judgment." In the prayer for relief included at the end of his petition, Devji sought dissolution of Kibo and a complete accounting of its funds. He also sought reinstatement as a director. We will therefore refer generally to his requests for relief and determine whether these requests are barred by *res judicata*.

Devji alleged in his petition that the 1998 final judgment directed the complete dissolution of Kibo so that the proceeds would be allocated half to Devji and half to the Kellers with Devji's portion to be payable to the judgment debtors from the 1998 lawsuit. According to Devji, a complete accounting of Kibo's surplus funds was necessary after dissolution to ascertain how much

---

[5] We do not address those claims that Devji did not have standing to maintain, *i.e.*, the claims relating to the $70,000 loan.

10

of Devji's half of the surplus funds was used to pay his judgment debt. Devji claimed that the Kellers, by their fraudulent conduct, prevented Kibo's dissolution by having the receivership terminated prematurely and taking control of Kibo. He further claimed that the Kellers failed to provide an accounting as specified in the final judgment and violated provisions in the final judgment by voting him out as a director of Kibo, when the judgment clearly states that Devji and the Kellers are to remain Kibo's directors until changed by a unanimous vote by the directors.

The factual allegations underlying each of these requests for relief did not arise until after the rendition of judgment in the 1998 lawsuit. Indeed, these claims stem from the Kellers' alleged conduct in preventing the enforcement of the 1998 final judgment. Thus, they could not have been raised during the 1998 lawsuit, and are not barred by the affirmative defense of *res judicata*. We sustain Devji's eleventh issue in part as it relates to these claims.

### B. Claims Against Christopher Keller

In the present case, Devji alleged that he had an attorney-client relationship with Christopher Keller between January and June 1997. As his attorney, Christopher Keller had a duty to warn Devji about the consequences of being a personal guarantor on a loan, according to Devji. In addition, Devji contended that Christopher Keller owed Devji a duty of loyalty, a duty to refrain from self-dealing, a duty not to conceal matters that might influence Devji's actions, a duty to represent Devji with undivided loyalty and to inform him of material facts as soon as a conflict arises, and a duty to fully disclose every facet of the proposed loan transaction between the Yusufalis, Devji, and Kibo. According to Devji, Christopher Keller concealed or failed to disclose that Kibo might not be required by law to repay the Yusufalis' loan.

11

Devji also alleged in his petition that in 1998, Christopher Keller misrepresented facts to induce Devji to execute the 1998 Shareholder Agreement, which resulted in the replacement of Yusufali as a Kibo director with Mark Keller. Consequently, the Kellers acquired a majority on Kibo's board of directors, removed Devji from his management position at Kibo, and took complete control of Kibo's assets. Based on these allegations, Devji sued Christopher Keller for fraud, statutory fraud, and violations of the warranty provisions of the DTPA.

In his 1998 lawsuit, Devji alleged generally that the Kellers had mismanaged Kibo. He also complained of Christopher Keller's conduct while he represented Devji as an attorney, contending that Christopher Keller breached his duties by advancing his personal interests to unjustly enrich himself, by taking advantage of Devji's lack of knowledge, ability, experience, or capacity to an unfair advantage, by conspiring with Mark Keller and others to defraud Devji and the Yusufalis, and by misrepresenting that he and Mark Keller had the financial resources and abilities to meet their obligations pursuant to the Shareholder Agreements.

In addition, Devji alleged that Christopher Keller made fraudulent misrepresentations in order to induce Devji to sign the 1998 Shareholder Agreement, naming Mark Keller as a Kibo director. Afterwards, the Kellers without cause or justification terminated Devji's services as CEO of Kibo and refused to continue to pay him his management fees. Based on these allegations (and others not relevant here), Devji sued Christopher Keller for negligence, breach of fiduciary duties, fraud, conspiracy, breach of warranty, violations of the DTPA, and other causes of action. In his prayer for relief, Devji requested repayment by Kibo of the amounts advanced to Kibo by Devji and the Yusufalis.

12

We hold that the factual allegations underlying Devji's claims against Christopher Keller that relate to his conduct as an attorney and his failure to inform Devji about the consequences of personally guaranteeing a loan stem from the same series of transactions that motivated Devji to sue Christopher Keller in 1998. The facts underlying both complaints relate to Christopher Keller's alleged failure to fulfill his duties as an attorney and his alleged attempts to defraud Devji by concealing facts relating to his management of Kibo's finances. In addition, Devji's allegations regarding the 1998 Shareholder Agreement, the appointment of Mark Keller as a director, and the termination of his managerial duties were all part of his 1998 lawsuit. Thus, we hold that Devji's claims against Christopher Keller were either finally adjudicated or with the use of diligence should have been litigated in the 1998 lawsuit.

### C. Claims Against Mark Keller

In his second lawsuit, Devji accused Mark Keller of committing the same fraudulent acts he asserted against Christopher Keller; that is, that Mark Keller conspired to defraud Devji by not repaying the Yusufalis for the $70,000 loan and by unjustly converting Kibo's funds for the Kellers' own personal use instead of repaying the loan. Devji further claimed that Mark Keller concealed from Devji the fact that Mohamed Raza Yusufali was still a director of Kibo and induced Devji to execute a shareholder agreement replacing Yusufali with Mark Keller. He sued Mark Keller for fraud and statutory fraud.

In the 1998 lawsuit, Devji accused Mark Keller of fraud and constructive fraud, claiming that he made false statements to Devji with the intent that Devji would rely on these false statements to his detriment and that he failed to disclose all material information regarding his and

13

Christopher Keller's financial ability to meet the commitments they undertook pursuant to the April 7, 1998 Shareholder Agreement. He further claimed that Mark Keller's true intent in executing the Shareholder Agreement, which was not disclosed to Devji, was to sabotage Kibo's operations and force its liquidation.

We hold that Devji's current claims against Mark Keller arose out of the same factual allegations that prompted his 1998 lawsuit against Mark Keller. Thus, these claims either were or could have been tried in the 1998 lawsuit.

**D. Claims Against Christopher and Mark Keller, Jointly and Severally**

*Unjust enrichment.* In his latest lawsuit, Devji again generally claimed that by their fraudulent acts, the Kellers unjustly enriched themselves at the expense of Devji. The facts he cited in support of his assertion are that at the end of the 1998 jury trial, the jury found that since Kibo's incorporation, Christopher Keller had advanced Kibo $80,500 and Mark Keller advanced $72,800. As of the termination of the receivership, however, the receiver returned to the Kellers $250,000. Thus, according to Devji, this surplus in funds evidences that the Kellers have been unjustly enriched at his expense. In his 1998 lawsuit, Devji generally asserted that Mark and Christopher Keller were unjustly enriched by profiting from their unfair transactions with Devji and Kibo and violating their duty of good faith and fair dealing.

In his pleadings in this cause, Devji did not clearly state what conduct he believes the Kellers engaged in to unjustly enrich themselves. After the 1998 lawsuit, however, a receiver was appointed to manage Kibo's business and assets, and therefore the Kellers could not have mismanaged Kibo during that time. To the extent that Devji complains the surplus in funds was a

14

result of the Kellers' conduct in managing Kibo while they still controlled Kibo's business transactions, we hold that allegation was adjudicated in the 1998 lawsuit and is barred by *res judicata*.

*Civil conspiracy.* In both his latest lawsuit and the 1998 lawsuit, Devji alleged under his civil conspiracy claim that the Kellers knowingly and intentionally conspired between themselves and with others to carry out an unlawful purpose or a lawful purpose by unlawful means, causing loss and injury to Devji and the Yusufalis. He did not describe, in either lawsuit, the facts that he believes support his claim, except to say in the 1998 lawsuit that the Kellers' conspiratorial conduct caused Devji and the Yusufalis to suffer losses by way of unsecured advances to Kibo and loss of management income. We hold Devji's conspiracy claim was finally adjudicated or should have been adjudicated in the 1998 lawsuit.

In sum, we hold that all of Devji's claims, save his "breach of a final judgment" claim, either were or could have been raised in his initial lawsuit and are thus barred by the doctrine of *res judicata*. The trial court did not err in granting summary judgment based on this affirmative defense. We sustain in part and overrule in part Devji's eleventh issue.

**Collateral Attack**

By his fifth issue, Devji complains that the appellees did not sufficiently allege and establish their affirmative defense of collateral attack to support summary judgment. Because we have held that appellees established that most of Devji's claims were barred by either *res judicata* or lack of standing, we need only consider the defense of collateral attack as it relates to Devji's remaining cause of action—Devji's claim for breach of the final judgment.

15

A collateral attack is "an attempt to avoid the effect of a judgment in a proceeding brought for some other purpose." *Spera v. Fleming, Hovenkamp & Grayson, P.C.*, 25 S.W.3d 863, 870 (Tex. App.—Houston [14th Dist.] 2000, no pet.) (quoting Gus M. Hodges, *Collateral Attacks on Judgments*, 41 Tex. L. Rev. 163, 163-64 (1962)); *accord Ranger Ins. Co. v. Rogers*, 530 S.W.2d 162, 167 (Tex. Civ. App.—Austin 1975, writ ref'd n.r.e.). A collateral attack is impermissible if it is instituted to interpret a prior judgment. *Spera*, 25 S.W.3d at 870-71.

By his breach of a final judgment claim, Devji asserted that the final judgment directed the complete dissolution of Kibo so that the proceeds would be allocated half to Devji and half to the Kellers with Devji's portion to be payable to the judgment debtors. According to Devji, a complete accounting of Kibo's surplus funds was necessary after dissolution to ascertain how much of Devji's half of the surplus funds was used to pay his judgment debt. Devji claimed that the Kellers prevented Kibo's dissolution by having the receivership terminated prematurely and taking control of Kibo. He further claimed that the Kellers failed to provide an accounting as specified in the final judgment and violated the provision in the final judgment that names Devji as one of Kibo's directors until changed by a unanimous vote of the Kibo directors. Appellees respond that Devji is attempting to collaterally attack the order terminating the receivership and discharging the receiver, which he never appealed.

*Reinstatement as a Kibo director.* The judgment in the 1998 lawsuit clearly states that Devji shall be a director of Kibo until changed by a unanimous vote of the directors. The Kellers argued at the summary judgment hearing that the judgment obviously included a clerical error and should have instead stated that Devji would remain a director of Kibo until changed by a

16

unanimous vote of the *shareholders*, not the directors. The Kellers informed the trial court that they had filed a motion for judgment *nunc pro tunc* to correct this error. Even if the Kellers' motion was granted, however, a judgment *nunc pro tunc* was not included as part of the summary judgment evidence and therefore could not be considered by either the trial court or by this Court. We hold that by seeking reinstatement as a director of Kibo pursuant to the 1998 judgment, Devji is not attempting to avoid the effect of the final judgment in the 1998 lawsuit. To the contrary, he is relying on that judgment to support his claim that the Kellers have defied the judgment in removing him as a director.

Nor do we construe Devji's complaint as a collateral attack on the order terminating receivership and discharging receiver. That order directs the receiver to deliver possession of Kibo's assets to the proper officers, *directors*, or shareholders of Kibo. Devji claimed he should be a director of Kibo based on the 1998 final judgment. He alleged that the Kellers have wrongfully removed him as a director, and therefore he was deprived of his share of Kibo's assets.[6] He did not seek to avoid the effect of that order.

*Dissolution of Kibo.* We reach a different conclusion with regard to Devji's request for dissolution of Kibo. The judgment in the 1998 lawsuit appoints a receiver "of the assets and business of Kibo" pursuant to section 7.05 of the business corporation act. *See* Tex. Bus. Corp. Act Ann. art. 7.05. Although the judgment includes among the receiver's duties dissolution of the

---

[6] We express no opinion as to whether Devji is actually entitled to any of Kibo's assets. Our holding is limited to the issue of whether his claim that he was wrongfully removed as a director of Kibo is an attempt to collaterally attack a final judgment.

17

corporation, the principal effect of the judgment was to appoint a receiver under section 7.05 of the act. Section 7.05 of the act governs appointment of a *rehabilitative* receiver "for the assets and business of a corporation." *Id.* art. 7.05A; *accord Mueller v. Beamalloy, Inc.*, 994 S.W.2d 855, 860 (Tex. App.—Houston [1st Dist.] 1999, no pet.). After the receiver sold most, if not all, of Kibo's property, the receiver concluded that Kibo was a solvent corporation. Furthermore, because Devji was no longer a shareholder in the corporation, there was no longer a deadlock in running the corporation. Accordingly, the receiver recommended that the receivership be terminated and that Kibo's remaining property and assets be redelivered to it. *See* Tex. Bus. Corp. Act Ann. art. 7.05B. These actions were consistent with the provisions of the business corporation act and with the judgment. We hold Devji's request for dissolution of Kibo is an attempt to avoid the effect of the trial court's order terminating the receivership and is therefore barred as an impermissible collateral attack on a final judgment. Accordingly, we sustain in part and overrule in part Devji's fifth issue.

**Limitations**

By his twelfth issue, Devji argues that appellees failed to conclusively prove their affirmative defense of limitations. We have already held that the trial court did not err in rendering summary judgment against Devji on all of his claims, save those that stem from the Kellers' alleged conduct following the rendition of the 1998 judgment, resulting in Devji's removal as a Kibo director. Appellees do not allege that Devji's "breach of judgment" claim is barred by limitations. Their limitations defense is limited to those claims that arise from the $70,000 loan. Thus, this issue is moot, and we do not reach it.

18

**Pleading Errors**

By his first issue, Devji alleges that the trial court erred in granting appellees' motion for summary judgment and severance on causes of action that were not addressed in the motion. He cites one paragraph in appellees' motion, in which appellees challenge Devji's standing to sue Kibo based on the $70,000 debt because he never paid the debt. Relying on this one paragraph, Devji concludes that appellees sought summary judgment only on his claims relating to the debt, and the trial court erred in granting summary judgment as to all of his other claims that did not relate to the debt.

The first paragraph of appellees' motion for summary judgment, however, alleges that the Kellers and Kibo are entitled to summary judgment as a matter of law "on *all claims* asserted against them based on their affirmative defenses of res judicata, limitations, lack of standing and impermissible collateral attack on a final judgment." (Emphasis added.) Thus, appellees' motion was not limited to Devji's debt claims and his standing to sue. We overrule Devji's first issue.

By his sixth issue, Devji asks whether appellees' motion for summary judgment generally complied with rule of civil procedure 166a.[7] *See* Tex. R. Civ. P. 166a. By his second, third, and fourth issues, Devji claims that appellees' assertions of their affirmative defenses of lack of standing, limitations, and *res judicata* were not legally sufficient to satisfy the minimum requirements under rule 166a.

---

[7] Devji cites no authority, presents no argument, and cites us to no portion of the record in support of this issue. He has therefore presented nothing for our review. *See* Tex. R. App. P. 38.1(h). We nevertheless address this issue in our discussion of his second, third, and fourth issues.

19

We may look to the pleading rules to assess appellees' motion for summary judgment. *Berkel v. Texas Prop. & Cas. Ins. Guar. Ass'n*, 92 S.W.3d 584, 594 (Tex. App.—Austin 2002, no pet.). Rule of civil procedure 45 requires that pleadings "consist of a statement in plain and concise language of the plaintiff's cause of action or the defendant's grounds of defense." Tex. R. Civ. P. 45; *accord Berkel*, 92 S.W.3d at 594. Rule 47 demands that pleadings contain "a short statement of the cause of action sufficient to give fair notice of the claim involved." Tex. R. Civ. P. 47; *accord Berkel*, 92 S.W.3d at 594. "'Fair notice' requires information sufficient to enable the adverse party to prepare a responsive pleading and prepare for trial." *Berkel*, 92 S.W.3d at 594. "The test should be whether an opposing attorney of reasonable competence, perusing the pleadings, can ascertain the nature and the basic issues of the controversy." *Id.* (quoting 2 *Texas Civil Practice* § 7:4, 131 (Diane M. Allen et al. eds., 1992 ed.) (Roy W. McDonald, orig. ed.)).

In their motion for summary judgment, appellees asserted that they are entitled to summary judgment on *all* claims alleged against them based on the affirmative defenses of *res judicata*, limitations, lack of standing, and impermissible collateral attack on a final judgment. They outlined certain key facts, referring to the 1998 lawsuit, the appointment of a receiver, the date of Kibo's default under the 1997 letter agreement, and Devji's failure to pay the $70,000 debt. Appellees then provided a short argument in support of each of their affirmative defenses. Although the motion was concise, we hold that the motion included information sufficient to enable an adverse party to ascertain the nature and the basic issues of the controversy and to prepare a response. We overrule issues two, three, four, and six.

20

By his eighth issue, Devji questions whether appellees' appendix to their motion for summary judgment complied with rule of civil procedure 166a(d). He fails to cite any authority, present any argument or analysis, or direct us to any part of the appellate record. *See* Tex. R. App. P. 38.1(h). Accordingly, he has waived this issue.

By his ninth issue, Devji argues that the trial court erred in overruling his special exceptions, by which he challenged appellees' appendix attached to their motion for summary judgment. Attached to appellees' motion were Devji's seventh amended petition from the 1998 lawsuit, the jury charge in that lawsuit, the final judgment in that lawsuit, this Court's judgment following appellate review of the trial court's judgment, the order terminating the receivership and discharging the receiver, Christopher Keller's affidavit, and a copy of the trial court's docket sheet from the 1998 lawsuit. Devji claims that these exhibits, along with appellees' request that the trial court take judicial notice of the contents of the court's file in the 1998 lawsuit, are too voluminous and vague to provide him fair notice of appellees' claims in their summary judgment motion. We disagree.

Appellees' claim of *res judicata* necessitated the inclusion of Devji's pleadings from his 1998 lawsuit as well as the jury charge and the judgment, so that the trial court could determine which of the claims in Devji's latest lawsuit had already been litigated or could have been litigated in the 1998 suit. That Devji's pleading was so voluminous, consisting of 61 pages, was a result of Devji's own drafting. Because Devji drafted this pleading himself, it is unlikely that Devji could not decipher which of his current claims had already been litigated in his 1998 lawsuit. Similarly, the jury charge, final judgment, and order terminating receivership were essential for the trial court's

21

determination of whether Devji's latest claims either had been or could have been adjudicated in the 1998 lawsuit as well as to determine whether Devji's claims constituted an impermissible collateral attack on a judgment. Furthermore, the exhibits were not so voluminous, nor did they include an unreasonable amount of collateral or irrelevant matter so as to be unwieldy. We overrule Devji's ninth issue.

**Procedural Errors**

By his fifteenth issue, Devji claims the trial court erred in permitting appellees' attorney to introduce extrinsic summary judgment evidence during the summary judgment hearing. During the summary judgment hearing, appellees' counsel referred to the final judgment in the 1998 lawsuit, wherein the judgment states that Devji is a director of Kibo until changed by a unanimous vote of the directors. Appellees' counsel informed the trial court during the summary judgment hearing that there was an error in the judgment and that it should instead read that Devji is a director of Kibo until changed by unanimous vote of the shareholders. He further stated that he had filed a motion for judgment *nunc pro tunc* just before the summary judgment hearing. Devji complains that appellees' counsel violated rule of civil procedure 166a(c), which states that no oral testimony shall be received at the hearing. *See* Tex. R. Civ. P. 166a(c). Because we have already held that appellees' affirmative defenses did not bar Devji's breach of final judgment claim as it relates to his removal from the Kibo board of directors, this issue is now moot. Accordingly, we dismiss this issue for mootness.

By his thirteenth issue, Devji alleges that the trial court erred in failing to grant his motion for continuance of the summary judgment hearing. He argues that the trial court should have

22

continued the hearing until appellees produced documents and provided answers to discovery. Devji filed his petition in this cause on September 9, 2002, along with discovery requests. He sent appellees additional discovery requests on October 4. Appellees filed their motion for summary judgment on October 11, 2002, and a hearing on the motion was set for November 7. On October 28, Devji filed a motion for continuance of the motion for summary judgment hearing, arguing that he needed the responses to his discovery requests before he could prepare a response to the summary judgment motion. The trial court held a hearing on the motion for continuance on October 31. At the end of that hearing, the trial court granted Devji's motion for continuance. The summary judgment hearing was reset for November 14. During that time, appellees were to respond to Devji's discovery requests that relate solely to the motion for summary judgment, so that Devji could use that information to respond to the motion. At the November 14 hearing, Devji complained to the trial court that appellees had not provided any discovery responses and the case was only thirty-one days old; he requested another continuance, which the trial court denied.

An appellate court does not disturb a trial court's order denying a motion for continuance unless the trial court has committed a clear abuse of discretion. *Villegas v. Carter*, 718 S.W.2d 4, 5 (Tex. 1985); *State v. Crank*, 666 S.W.2d 91, 94 (Tex. 1984). A trial court abuses its discretion when it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law. *Johnson v. Fourth Court of Appeals*, 700 S.W.2d 916, 917 (Tex. 1985). Before the reviewing court will reverse the trial court's ruling on a motion for continuance, it should appear from the record that the trial court has disregarded the party's rights. *Yowell v. Piper Aircraft*

23

*Corp.*, 703 S.W.2d 630, 635 (Tex. 1986); *Royal Mortgage Corp. v. Montague*, 41 S.W.3d 721, 738 (Tex. App.—Fort Worth 2001, no pet.).

Appellees filed a traditional motion for summary judgment, asserting that they had conclusively established each of their affirmative defenses. They bore the burden of presenting summary judgment evidence supporting their assertions. Devji does not specify what information he sought through discovery that was necessary to his summary judgment response. Nor does he explain how such information would have raised a question of fact as to any of appellees' affirmative defenses or otherwise defeated appellees' summary judgment motion. We therefore conclude that the trial court did not abuse its discretion in denying Devji's motion for continuance and overrule his thirteenth issue.

By his seventh issue, Devji complains of the trial court's severance of the causes of action between Devji and appellees from the causes of action between himself and the Yusufalis. The rule of civil procedure regarding dropping parties and severing causes of action is broad; trial courts enjoy great discretion in severing and proceeding separately with "any claim against a party." Tex. R. Civ. P. 41. A trial court's decision to grant a severance will not be disturbed unless the trial court abused its discretion. *Guaranty Fed. Savs. Bank v. Horseshoe Operating Co.*, 793 S.W.2d 652, 658 (Tex. 1990); *Nicor Exploration Co. v. Florida Gas Transmission Co.*, 911 S.W.2d 479, 481 (Tex. App.—Corpus Christi 1995, writ denied). Severance of a claim is proper if (1) the controversy involves more than one cause of action; (2) the severed claim is one that would be the proper subject of a lawsuit if independently asserted; and (3) the severed claim is not so interwoven with the

remaining action that it involves the same facts and issues. *Nicor Exploration Co.*, 911 S.W.2d at 481-82.

In this case, Devji had not asserted any claims against the Yusufalis in his petition. Thus, he cannot show that the claims against them were so interwoven with those against appellees as to render a severance an abuse of discretion. We therefore overrule Devji's seventh issue.

By his fourteenth issue, Devji contends that he did not receive a fair and impartial hearing before the trial court. For support, he states that the trial court judge ignored the summary judgment requirements mandated by the rules of civil procedure, was "very biased" and gave the appearance that she made up her mind before Devji even opened his mouth, and did not provide Devji an opportunity to present his summary judgment evidence and arguments. The reporter's record filed with this Court reveals otherwise.

The United States Supreme Court has determined that "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion," and "judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge." *Liteky v. United States*, 510 U.S. 540, 555 (1994). Further, "[a] judge's ordinary efforts at courtroom administration—even a stern and short-tempered judge's ordinary efforts at courtroom administration—remain immune." *Id.* at 556. In short, a trial court has the inherent power to control the disposition of cases "with economy of time and effort for itself, for counsel, and for litigants." *Landis v. North Am. Co.*, 299 U.S. 248, 254 (1936).

25

Similarly, the Texas Supreme Court has held that "the discretion vested in the trial court over the conduct of a trial is great." *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 240 (Tex. 2001) (quoting *Schroeder v. Brandon*, 172 S.W.2d 488, 491 (Tex. 1943)). A trial court has the authority to express itself in exercising this broad discretion. *Id.* at 240-41. Further, a trial court may properly intervene to maintain control in the courtroom, to expedite the trial, and to prevent what it considers to be a waste of time. *Id.* at 241.

In his brief, Devji's only reference to the record is a citation to the entire transcript of the summary judgment hearing. He fails to specify which, if any, of the trial court's comments reflected its bias towards him. We have nevertheless reviewed the entire reporter's record, and applying the aforementioned principles, we conclude that there is no evidence of judicial bias. Devji's fourteenth issue is overruled.

By his final issue, Devji generally states that the trial court erred in granting appellees' motion for summary judgment and severance. He cites no authority for this issue and provides no argument. We therefore hold that he has waived this issue. *See* Tex. R. App. P. 38.1(h). We believe that we have nevertheless addressed this issue in our discussion above.

**CONCLUSION**

We hold that appellees failed to establish as a matter of law that Devji's "breach of a final judgment" claim, as it relates to his removal as a Kibo director, was barred by any of their asserted affirmative defenses. All of Devji's remaining claims were barred by either *res judicata*, lack of standing, or collateral attack of a final judgment, and the trial court did not err in granting appellees' summary judgment on those claims. Accordingly, we reverse and remand the single

26

claim, wherein Devji challenges his removal as a Kibo director; we affirm the trial court's summary judgment as it relates to all of Devji's remaining causes of action.

_____

Jan P. Patterson, Justice

Before Justices Kidd, Yeakel and Patterson

Affirmed in Part; Reversed and Remanded in Part

Filed:   July 24, 2003